988 F.Supp. 1285 (1997)
ABDULLAH SAYID RAJAB AL-RIFAI & SONS W.L.L., Plaintiff,
v.
McDONNELL DOUGLAS FOREIGN SALES CORPORATION, Defendant.
No. 4:97CV1567-DJS.
United States District Court, E.D. Missouri, Eastern Division.
December 10, 1997.
*1286 Timothy F. Noelker, Michael T. Marrah, Thompson Coburn, St. Louis, MO, Stephen Truitt, Charles H. Carpenter, Pepper Hamilton LLP, Washington, DC, for Plaintiff.
Kevin M. Abel, Jeanette D. Valentine, Bryan Cave, L.L.P., St. Louis, MO, for Defendant.

*1287 ORDER

STOHR, District Judge.

I. Introduction
On July 28, 1997, plaintiff filed its one-count complaint seeking money due for commissions earned under a representation agreement with defendant. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. On September 18, 1997, defendant filed a motion to dismiss or, in the alternative, to stay the case based on the existence of a pending case in Kuwait which defendant contends addresses the identical issues raised in the present case. Additionally, defendant filed a motion for limited stay of discovery pending the Court's disposition of its motion to dismiss. In an Order dated September 30, 1997, the Court stayed discovery in the case until December 12, 1997. This matter is now before the Court on defendant's motion to dismiss or, in the alternative, to stay the case and plaintiff's opposition thereto.

II. Facts
Plaintiff Abdullah Sayid Rajab Al-Rifai & Sons W.L.L. ("ASRR") is a trading and contracting company organized under Kuwaiti law, with its principal place of business in Kuwait. See Pltf's Complaint, ¶ 1. Defendant McDonnell Douglas Foreign Sales Corporation ("MDFSC") is a wholly owned subsidiary of McDonnell Douglas Corporation ("MDC") organized under the laws of the Virgin Islands which transacts substantial business in Missouri. Id. at ¶ 2. Beginning in 1974, plaintiff, through its now deceased principal, Colonel Abdullah Sayid Rajab Al-Rifai ("Colonel Al-Rifai"), entered into a series of representation agreements with MDC and two of its wholly-owned subsidiaries, McDonnell Douglas International Sales Corporation ("MDISCO") and defendant MDFSC. See Deft's Mtn. to Dismiss, 2-3. Pursuant to these agreements, plaintiff was appointed as MDC's sales representative to "solicit and promote, but not to consummate, sales and leases" of MDC goods and services. See Pltf's Complaint, Exh. 1, at 2, ¶ 1.1. In exchange for its services, plaintiff was to receive prescribed commissions under the representation agreements. See Deft's Mtn. to Dismiss, 2.

A. History of the Contractual Relationship
Through it's principal, Colonel Al-Rifai, plaintiff and MDC entered into a representation agreement in 1974 which continued until 1983. Id. On June 6, 1983, plaintiff entered into a new representation agreement with MDISCO, MDC's wholly owned subsidiary ("the 1983 agreement"). See Pltf's Opp., 2. Pursuant to the 1983 agreement, in exchange for its services, plaintiff was entitled to three percent of MDISCO or MDC's net receipts from sales arising out of the defined territory. See Deft's Mtn. to Dismiss, Al-Humaidan Aff., Exh. 2, exh. A. The 1983 agreement was amended by the parties on four occasions and was to expire on April 30, 1985. See id. at Exhs. 3-7. Administrative delays prevented timely extension of the 1983 agreement, but in a telex dated May 6, 1985, MDISCO extended the contract until further notice. Id. at Exh. 7.
On August 19, 1985, defendant informed plaintiff that defendant, and not MDISCO, would be the contracting party to the new representation agreement. Id. at Exh. 9. Defendant alleges that for tax purposes, MDC chose to use its two subsidiaries at different times during its business relationship with plaintiff. See Deft's Mtn. to Dismiss, 3. On November 21, 1985, plaintiff and defendant entered into a representation agreement which by its terms expired on October 31, 1987 ("the 1985 agreement"). Id. at Exhs. 10-11. According to the 1985 agreement, plaintiff's compensation for services included varying commissions depending upon the particular product and whether that product was leased or sold. Id. at Exh. 10, exhs. A-E. The 1985 agreement contains the following provision:
3.3 Termination or Expiration  In the event this Agreement is discontinued by termination or by expiration Representative's right to receive commission payments, if any, which are agreed to by the parties as set forth in the Exhibit(s) hereto in connection with sales or leases of the Products pursuant to orders accepted by MDFSC or suppliers of Products within six (6) months after notice of termination is given, as provided in Articles 7 and 9, or *1288 within six (6) months after expiration shall not be affected ...
Deft's Mtn. to Dismiss, Al-Humaidan Aff., Exh. 10, ¶ 3.3. On March 16, 1988, defendant sent plaintiff a telex which stated "[d]ue to administrative delays, extension of this agreement has not yet been completed. Therefore, by this message, subject agreement is hereby extended until definitization of an extension or a new agreement or formal notice that an agreement will not be extended has taken place whichever occurs first." Deft's Mtn to Dismiss, Exh. 11.
In March of 1988, the Kuwaiti Air Force was considering whether to purchase McDonnell Douglas F-18 aircraft. See Pltf's Opp., 3. In April of 1988, a delegation from the Kuwaiti Air Force visited the United States and test flew the F-18. Id. On June 6, 1988, Kuwait requested authorization from the United States to purchase forty F-18s. Id. at 4. Subsequently, on July 7, 1988, the President notified Congress of the sale. Id., citing, Notice of Proposed Issuance of Letter of Offer Pursuant to Section 36(b)(1) of the Arms Control Export Act, reprinted in 134 Cong.Rec. E 2775 (1988). Kuwait formally agreed to purchase the aircraft on August 27, 1988. See Pltf's Complaint, ¶ 17. Effective that same date, the U.S. Navy entered into a contract with MDC for the purchase of forty F-18s, spare parts and assorted related products. See Pltf's Opp., 4. Products that are governed by the Arms Control Export Act, 22 U.S.C. § 2776, are usually purchased from the supplier by a governmental agency who in turn resells the product to the foreign government. See id. Following a delay caused by the Persian Gulf War, the aircraft were delivered to Kuwait in January of 1993. Id. Plaintiff is unaware of how much money MDC received as a result of the sale and therefore, the amount of any commission plaintiff is entitled to is uncertain. Id.
On April 13, 1988, plaintiff received notification from MDISCO, another wholly-owned subsidiary of MDC, that MDFSC's representation agreement with defendant would not be renewed. See Deft's Mtn to Dismiss, Al-Humaidan Aff., Exh. 13. Instead, MDISCO notified plaintiff that MDISCO, and not defendant, would be the contracting party for a new representation agreement ("the 1988 agreement"). Id. This new agreement provided for a reduction in the commission percentage rate for initial sales of F-18 aircraft from one percent to one-quarter percent. See id. at Exh. 14, exh. B. The 1988 agreement was to run from November 1, 1987 until October 31, 1989. See id. at Exh. 14.
To date, plaintiff alleges that it has received a total of $2,101,402.97 in commissions from the sale of the forty F-18s and that it is due at least $16,000,000.00 under the 1985 agreement. See Pltf's Complaint, ¶¶ 20, 23.

B. The Kuwaiti Action
Plaintiff instituted a suit against MDISCO on December 3, 1994 before the Court of First Instance in the Commercial Circuit of the State of Kuwait ("the Kuwaiti Action"). Deft's Mtn. to Dismiss, Al-Humaidan Aff., ¶ 2. In the Kuwaiti Action, plaintiff seeks statutory damages for non-renewal of the representation agreements and payment of all commissions then due. See Pltf's Opp., 6-7. Defendant moved to dismiss the Kuwaiti action arguing that the representation agreements had not been properly registered with the government, that plaintiff's claims for statutory damages were time-barred, and that no commission was due under Kuwaiti law because the sales at issue took place outside of Kuwait. Id.
On March 13, 1996, the Court of First Instance issued a partial judgment finding that (1) the action would not be dismissed for non-registration; (2) plaintiff's claim for statutory damages was time-barred; and (3) the commission rate in the 1983 agreement did not apply to the sale of the F-18 aircraft. Id. at 7. Accordingly, the Court of First Instance reserved judgment on plaintiff's claims for commissions arising out of the aircraft sale and referred the matter to the Experts Department of the Kuwaiti Ministry of Justice ("the Experts Department") for an accounting of the commissions due to plaintiff. Id. In late October of 1997, the Experts Department found for plaintiff in the amount of $637,588 for commissions relating to the aircraft sale. Subsequent to the Experts Department's recommendation, the matter was referred back to the Court of First Instance for a final determination. Deft's Reply, 7.
*1289 On November 3, 1997, after defendant filed its motion to dismiss plaintiff's complaint herein based on the pending action in Kuwait, plaintiff moved the Court of First Instance to dismiss its claims for commissions arising under the representation agreements. Id. at 2. The Court of First Instance took plaintiff's motion under advisement. Id. at 2 n. 1. The parties dispute whether a ruling on plaintiff's motion to dismiss can be expected shortly.

C. The Instant Action
In the present case, plaintiff alleges that defendant has not fully paid plaintiff's commissions under the 1985 agreement for the sale of the F-18 aircraft to Kuwait. See Pltf's Complaint, ¶ 23. Plaintiff argues that the sale of these aircraft occurred during the effective period of the commission obligation in the agreement and therefore, the sale is subject to the 1985 agreement's one percent commission. Id. at ¶ 22. Neither MDC nor MDISCO has been named as a defendant in this action.

III. Discussion
Based on deference to the pending Kuwaiti action, defendant seeks to have the instant action dismissed or, in the alternative, stayed pending the outcome of the Kuwaiti proceedings.

A. Motion to Dismiss
In determining whether to dismiss the instant action in favor of the Kuwaiti action the Court is mindful of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246, citing, England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, ___, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996).
Defendant urges the Court to dismiss the present action because it presents the same claims and issues as the Kuwaiti action which has been pending since December of 1994. Citing Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), defendant argues that the Court has the inherent power to control its own docket, ensuring judicial efficiency and fairness. Moreover, defendant asserts that the Court has the inherent power to dismiss this action based on the pendency of a related foreign proceeding. See Evergreen Marine Corp. v. Welgrow Int'l, Inc., 954 F.Supp. 101, 103 (S.D.N.Y.1997); Dragon Capital Partners v. Merrill Lynch Capital Services, Inc., 949 F.Supp. 1123, 1127 (S.D.N.Y.1997); DeYoung v. Beddome, 707 F.Supp. 132, 135 (S.D.N.Y. 1989); Brinco Mining Ltd. v. Federal Ins. Co., 552 F.Supp. 1233, 1240 (D.D.C.1982); Continental Time Corp. v. Swiss Credit Bank, 543 F.Supp. 408, 410 (S.D.N.Y.1982). Based upon these cases from the Southern District of New York, defendant urges the Court to exercise "international abstention." In this line of cases, the New York courts have analyzed several relevant factors to determine whether an action should be dismissed or stayed including: "the similarity of parties and issues involved in the foreign litigation; the promotion of judicial efficiency; adequacy of relief available in the alternative forum; issues of fairness to and convenience of the parties, counsel and witnesses; the possibility of prejudice to any of the parties; and the temporal sequence of the filing of the actions." Evergreen Marine Corp. v. Welgrow Int'l, Inc., 954 F.Supp. 101, 103 (S.D.N.Y.1997) (citations omitted). Defendant contends that each of these factors weighs in favor of dismissing the action. The Eighth Circuit has recognized these factors in Boushel v. Toro Co., 985 F.2d 406, 410 n. 2 (8th Cir.1993).
In support of its motion to dismiss, defendant analogizes the present situation to that presented in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), where parallel proceedings to those in the federal district court were pending before a state forum. Id. at 817, 96 S.Ct. at 1246. Factors relevant to the determination of whether to dismiss the federal action include: "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums" with no one factor being necessarily determinative. Colorado *1290 River, 424 U.S. at 818, 96 S.Ct. at 1246; see also Turner Entertainment Co. v. Degeto Film, 25 F.3d 1512, 1518 (11th Cir. 1994), citing, Ingersoll Milling Mach. Co. v. Granger, 833 F.2d 680, 685 (7th Cir.1987). Neither the Supreme Court nor the Eighth Circuit Court of Appeals has squarely addressed the issue of whether a district court may dismiss a case based on the pendency of an action in a foreign country.
Plaintiff argues that the Supreme Court's recent decision in Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) precludes the dismissal of the instant case. In Quackenbush,[1] the Court held that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush, at 730-31, 116 S.Ct. at 1728. The Quackenbush Court reviewed the various abstention doctrines,[2] but made no mention of any type of international abstention.[3]
Defendant contends that the Supreme Court's holding in Quackenbush is inapplicable because it does not address the issues of deference to pending foreign actions. Defendant argues that Quackenbush is aimed solely at Burford abstention and its accompanying principles of federalism and state sovereignty and does not impact the validity of the New York cases which instead address foreign actions and accompanying principles of comity. At least two Southern District of New York cases facing the issue of deference to foreign proceedings have been decided subsequent to Quackenbush. See Evergreen Marine Corp. v. Welgrow Int'l, Inc., 954 F.Supp. 101 (S.D.N.Y.1997); Dragon Capital Partners L.P. v. Merrill Lynch Capital Serv., Inc., 949 F.Supp. 1123 (S.D.N.Y.1997). Neither decision addresses the Quackenbush decision and both decisions continue to espouse the district court's inherent power to dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction. See Evergreen, 954 F.Supp. at 103; Dragon, 949 F.Supp. at 1127. The Evergreen court states, "the considerations involved in deferring to state court proceedings are different from those involved in deferring to foreign proceedings, where concerns of international comity arise and issues of federalism and federal supremacy are not in play." Evergreen, 954 F.Supp. at 104 n. 1.
Despite the contention that Quackenbush only prohibits dismissal of actions at law under Burford abstention and is therefore inapplicable to the present issue, other courts have read Quackenbush more broadly. The Eighth Circuit has stated "[i]n Quackenbush, the Court `decided that federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.'" Warmus v. Melahn, 110 F.3d 566, 567 (8th Cir.1997), quoting, Amerson v. Iowa, 94 F.3d 510, 512 (8th Cir.1996) (internal quotations omitted). The Eighth Circuit has *1291 recognized that in actions at law, the court does not have power to dismiss an action based on abstention principles. See id. Additionally, other circuits have recognized that the holding in Quackenbush is not limited to Burford abstention. In DeMauro v. DeMauro, 115 F.3d 94, 98 (1st Cir.1997), the court stated, "the Supreme Court held ... that in a damages action, the district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether." Id. (internal citations omitted); see also Pompey v. Broward County, 95 F.3d 1543, 1552 n. 12 ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles."). The Quackenbush Court clearly stated that the power to dismiss or stay federal court proceedings is rooted in the court's equitable and discretionary powers which are not invoked in the present action.
The Court finds that an outright dismissal of the instant action at law is improper in light of Quackenbush. Because plaintiff's claim is for money due, this is a legal action that does not involve equitable or discretionary relief. Accordingly, the Court will not dismiss the instant action.

B. Motion to Stay
Although the Court will not dismiss this action, the Quackenbush decision does not preclude the Court from issuing a stay. The Quackenbush Court emphasized the difference between an outright dismissal and a stay. "[A]n order merely staying the action does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." Quackenbush, 517 U.S. at 720, 116 S.Ct. at 1723; see also Feige v. Sechrest, 90 F.3d 846, 851 (3d Cir.1996). Federal courts do have the power, based on abstention principles, to stay actions for damages. Quackenbush, at 720, 116 S.Ct. at 1723.
The determination of whether to stay a federal court proceeding is governed by federal law. See Ingersoll Milling Machine Co. v. Granger, 833 F.2d 680, 685 n. 1 (7th Cir.1987). As a general rule, parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously. See Gau Shan Co., Ltd. v. Bankers Trust Co., 956 F.2d 1349, 1352 (6th Cir.), appeal dismissed, 966 F.2d 1452 (6th Cir.1992); General Motors Corp. v. Ignacio Lopez de Arriortua, 948 F.Supp. 656, 668 (E.D.Mich.1996); Ludgate Ins. Co. v. Becker, 906 F.Supp. 1233, 1242 (N.D.Ill.1995). However, in the interests of judicial economy and international relations, a federal court may stay an action in favor of pending foreign litigation. In Boushel v. Toro Co., 985 F.2d 406 (8th Cir.1993), the Eighth Circuit held that the district court's order staying its proceedings in favor of a pending Canadian action was not a final order and thus, not properly before the appellate court, however, in a footnote, the court indicated that the district court had not erred in entering the stay. Id. at 410 n. 2. The district court had considered the factors enumerated in the line of cases from the Southern District of New York including: "the similarity of the two actions, the degree of process already made in the [foreign] action, the adequacy and appropriateness of the [foreign] forum, and notions of international comity and judicial efficiency." Id., citing, Caspian Inv., Ltd. v. Vicom Holdings, Ltd., 770 F.Supp. 880, 883-85 (S.D.N.Y.1991). Accordingly, in determining whether a stay is appropriate in the instant case, the Court will consider the aforementioned factors.

a. The Similarity of the Two Actions
Both this case and the Kuwaiti action involve the commissions purportedly owed to plaintiff arising out of representation agreements entered into between plaintiff and subsidiaries of McDonnell Douglas. Consequently, the issues involved in each case are substantially similar. The similarity of parties in the two actions is a more difficult determination. In the Kuwaiti action, the only named defendant is MDISCO, a wholly owned subsidiary of MDC who entered into the 1983 and 1988 agreements with plaintiff. See Deft's Mtn. to Dismiss, Al-Humaidan Aff., Exhs. 2, 14. Defendant herein, MDFSC, is a different wholly owned subsidiary of MDC and entered into the 1985 agreement with plaintiff. MDFSC is not a party to the Kuwaiti litigation. See id. at Exhs. 1, 10.
*1292 Plaintiff contends that a stay is inappropriate because the present action is against a separate entity from the defendant in the Kuwaiti action and is based upon a separate legal obligation. Plaintiff contends that the sale of the F-18 aircraft occurred between November 1, 1987 and October 13, 1988, a period covered by two representation agreements and therefore, both MDISCO and defendant MDFSC are obliged to pay plaintiff commissions for the sale. See Pltf's Opp., 20. Defendant argues that plaintiff's assertion that it is owed two commissions for the same aircraft sale is "arrogant" and presents difficulties with potential double recoveries. Deft's Reply, 2. Moreover, Defendant argues that MDISCO, defendant in the Kuwaiti action and MDFSC, defendant here, are substantially similar parties and therefore the issuance of a stay is warranted.
Parties need not be identical in order to warrant a stay of the present case in deference to an earlier action. Caspian Inv., Ltd. v. Vicom Holdings, Ltd., 770 F.Supp. 880, 884 (S.D.N.Y.1991); see also Dragon Capital Partners L.P. v. Merrill Lynch Capital Services, Inc., 949 F.Supp. 1123, 1127 (S.D.N.Y.1997); Continental Time Corp. v. Swiss Credit Bank, 543 F.Supp. 408, 410 (S.D.N.Y.1982). However, defendant has provided the Court with no authority defining substantially similar parties as one separate corporate subsidiary in the one action and an entirely different corporate subsidiary in another. Alternatively, defendant argues that plaintiff is estopped from arguing that MDISCO and MDFSC are two separate entities because "plaintiff has consistently treated all of the MDC affiliates as one party," specifically enumerated as "defendant Company." Deft's Mtn. to Dismiss, 11. Defendant points to plaintiff's Kuwaiti summons and complaint which alleges that "defendant Company" executed all of the representation agreements, "even though MDC was a signatory to the 1974 Agreement and MDFSC was a party to the 1985 Agreement." Id., see also id. at Al-Humaidan Aff., Exh. 1.
The Court finds that although both actions involve commissions owed to plaintiff arising out of the same aircraft sale, defendant has failed to establish that plaintiff is estopped from arguing that MDISCO and MDFSC are two separate entities. Defendant argues that if this action is permitted to proceed, it will be subject to inconsistent judgments. It is unclear how defendant could be subject to liability for a Kuwaiti judgment to which it is not a party in the underlying action. It is not for this Court to decide whether plaintiff has sued the proper party in Kuwait on its claims for commissions or whether defendant MDFSC would be liable for any judgment issued in that action. Plaintiff has sued a wholly different entity in Kuwait from the entity sued in this Court, and defendant has not established the circumstances required for piercing the corporate veil under Missouri law. See Fairbanks v. Chambers, 665 S.W.2d 33, 37 (Mo.App.1984). Accordingly, the identification of the parties is not sufficiently similar so as to require a stay.

b. The Degree of Progress Already Made in the Foreign Action
The Kuwaiti litigation has been pending since December of 1994 while the instant action was filed on July 28, 1997. Consequently, the temporal sequence of the filing of the actions clearly weighs in favor of a stay. The issue of the amount of commissions owed to plaintiff arising out of the sale of the F-18 aircraft has progressed significantly through the Kuwaiti court system. The Court of First Instance referred the issue to the Experts Department for an accounting. In late October 1997, the Experts Department issued its opinion that plaintiff was entitled to recover $637,588 in commissions relating to the aircraft sale. See Deft's Reply, 7. Despite this finding by the Experts Department, the matter remains referred to the Court of First Instance for a final determination. On November 3, 1997, plaintiff dismissed its claims for commissions in the Kuwaiti action. The Court of First Instance has neither made a final determination based on the Experts Department's determination nor issued a ruling on plaintiff's motion to dismiss.
The fact that plaintiff has moved to dismiss its claims for commissions before the Kuwaiti court weighs against staying the instant action. Although the Kuwaiti litigation has been proceeding for three years, any progress achieved in the determination of plaintiff's claims for commissions will be voided by *1293 potential dismissal of the actions. If the claims are dismissed, there would be no foreign action to which this Court could defer, making a stay improper. This factor weighs against issuing a stay in the instant action.

c. The Adequacy and Appropriateness of the Foreign Forum
The Court agrees with defendant that plaintiff "should not be heard to complain that the relief available from the Court of First Instance is inadequate when it initially chose the forum and invoked that court's jurisdiction." Deft's Mtn. to Dismiss, 13. Case law supports defendant's position. See Caspian Inv., Ltd. v. Vicom Holdings, Ltd., 770 F.Supp. 880, 883 (S.D.N.Y.1991); Brinco Mining, Ltd. v. Federal Ins. Co., 552 F.Supp. 1233, 1241 (D.D.C.1982). Although plaintiff may not claim that the forum they have chosen is inadequate to address its claims, the Court must also examine the convenience of the foreign forum. The issues in the instant action are seemingly more conveniently resolved in the present forum. The main questions at this juncture are (1) whether the aircraft sale took place during the pendency of the 1985 representation agreement between plaintiff and defendant and (2) the net receipts on the aircraft sale. Because the representation agreement provides that it "shall be construed in accordance with the laws, other than its conflict law rules, of the State of Missouri, U.S.A., the location of the principal corporate office of MDC," Missouri would not be an unreasonable forum. See Deft's Mtn. to Dismiss, Al-Humaidan Aff., Exh. 10, at 18. None of the evidence pertinent to the aforementioned issues is uniquely situated in Kuwait and is seemingly equally available, if not more conveniently available in Missouri. Although the parties' Kuwaiti counsel have been involved in the litigation for some time and have no doubt developed a detailed familiarity with the facts in the case, both parties have secured counsel in Missouri who are accustomed to practice in the federal district courts. Additionally, plaintiff who is located in Kuwait, is not adverse to conducting litigation in Missouri, and defendant conducts substantial business here, therefore, Missouri is apparently the more convenient forum for the parties.

d. Judicial Efficiency and Deference to Foreign Proceedings
Defendant argues that a stay should be entered based on the principles of international comity citing Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity is defined as the recognition of the judgment of a foreign court and because no formal judgment has been entered in Kuwait, the principles of comity do not apply. See discussion supra at note 3; see also Dragon Capital Partners L.P. v. Merrill Lynch Capital Serv., Inc., 949 F.Supp. 1123, 1127 n. 8 (S.D.N.Y.1997).
Moreover, staying the present action will not necessarily promote judicial efficiency. It is unclear that the resolution of plaintiff's claims in Kuwait would resolve the instant dispute. First, there are different defendants in each proceeding. The dispute between plaintiff and defendant MDISCO in Kuwait may not resolve the dispute between plaintiff and defendant MDFSC in the instant action. Second, there is a motion to voluntarily dismiss all claims for commissions in Kuwait. A stay is inappropriate in light of what is apparently the imminent dismissal of all claims for commissions in Kuwait.
Accordingly, the interests of judicial efficiency and deference to foreign proceedings do not outweigh the general rule that "federal courts exercise jurisdiction concurrently with a foreign court until a judgment is reached which may be pled as res judicata or collateral estoppel in the other forum." General Motors Corp. v. Ignacio Lopez de Arriortua, 948 F.Supp. 656, 669 (E.D.Mich. 1996). Moreover, no complex issue of Kuwaiti law exists so as to require this Court to stay its proceedings in deference to a Kuwaiti court determination on an important local issue. Cf. Fornaris v. Ridge Tool Co., 400 U.S. 41, 44, 91 S.Ct. 156, 158, 27 L.Ed.2d 174 (1970) (directing district court to "hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question in light of the federal claims"). On the contrary, the issue in Kuwait relating to commissions on an agreement are seemingly nothing more than a "run-of-the-mill contract dispute." See Quackenbush, 517 U.S. at 728, *1294 116 S.Ct. at 1727. Accordingly, neither the interests of the foreign court nor concerns with judicial efficiency warrant a stay.

IV. Conclusion
Because the Court is not acting in an equitable or discretionary capacity, dismissal of the instant action in favor of the pending proceedings in Kuwait is an inappropriate exercise of abstention principles. Additionally, due to the dissimilarity of parties, the convenience of the present forum and the likelihood of dismissal of at least a portion of the foreign action, the Court finds that a stay pending the outcome of the litigation in Kuwait is also inappropriate.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion to dismiss, or in the alternative to stay [Doc. # 20] is denied.
IT IS FURTHER ORDERED that the stay entered in the Court's September 30, 1997 Order is hereby vacated.
IT IS FURTHER ORDERED that the parties have thirty (30) days from the date of this Order to respond to any outstanding discovery requests.
NOTES
[1] Quackenbush discussed Burford abstention. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention proper where federal review would be disruptive of state efforts to establish a consistent policy relating to a matter of substantial public interest).
[2] In Quackenbush, the Court reviewed the recognized abstention doctrines. See, e.g., Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention proper where there would be potential interference with a pending state criminal proceeding); Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention proper where a federal constitutional question may be avoided if state court is given an opportunity to rule on a question of ambiguous state law); Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (abstention proper where federal litigation would be hindered by an unresolved question of state law); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (abstention proper in limited circumstances where case is duplicative of a pending state proceeding). The facts presented here do not fall into any of the above-mentioned categories of abstention.
[3] The issue is not one of international comity which is defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws." Dragon Capital Partners v. Merrill Lynch Capital Serv., Inc., 949 F.Supp. 1123, 1126 n. 8 (S.D.N.Y.1997), quoting, Black's Law Dictionary 267 (6th ed.1990). "Comity refers to deference to another sovereign's definite law or judicial decision" and not to pending proceedings. See id.