**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** Marlwood Commercial Inc., Omega Group Holdings Ltd., Pine Street Investment Ltd., Pinford Portfolio Inc., Helendale Trading Corp., and Telos Finance Ltd., Plaintiffs,

v.

Viktor KOZENY, Landlocked Shipping Company, Peak House Corporation, and Turnstar Limited, Defendants.

Civil Action No. 00–B–383.

United States District Court, D. Colorado.

Sept. 25, 2000.

Frederick J. Baumann, Thomas J. Dougherty, Rothgerber Johnson & Lyons, LLP, Stephen P. Younger, Joshua E. Burstein, Patterson, Belknap, Webb & Tyler, LLP, New York City, Matthew N. Kaplan, Daniel Kramer, Schulte Roth & Zabel, LLP, New York City, for plaintiffs.

Paul Franke, III, Bradley J. Haight, Hall & Evans, James E. Nesland, Paul H. Schwartz, Cooley Godward, LLP, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA, Marlwood Commercial Inc., Omega Group Holdings Ltd., Pine Street Investment Ltd., Pinford Portfolio Ltd., Helendale Trading Corp., and Telos Finance Ltd. (collectively, Plaintiffs) move to stay these proceedings against Defendant Viktor Kozeny and Defendants Landlocked Shipping Company, Peak House Corporation and Turnstar Limited (collectively, Corporate Defendants), pending resolution of a parallel proceeding (London proceeding) pending in the English High Court of Justice in London (London Court). After consideration of the motion, briefs, and argument taken at the September 22, 2000 hearing, I grant the motion for stay of proceedings.

## I.

### Facts

Mr. Kozeny, a Bahamian resident with Irish citizenship and a Grenadian passport, is alleged to have fraudulently induced Plaintiffs to enter investment and custodian contracts with his companies Minaret Group Limited (Minaret) and Oily Rock Group Limited (Oily Rock). These companies are organized under the laws of the British Virgin Islands (BVI) with their principal place of business in the Republic of Azerbaijan. The operative contracts are governed expressly by English law and contain English forum selection clauses. Pursuant to these contracts, Plaintiffs claim they entrusted approximately $140 million to Minaret and Oily Rock to acquire Azeri privatization vouchers and options on their behalf. It is alleged, however, that Mr. Kozeny diverted millions of dollars of Plaintiffs' investment funds for his own benefit, by using nominee companies around the world, including the Corporate Defendants, to shelter these ill-gotten proceeds.

In December 1999, Plaintiff Marlwood filed the initial proceedings in the London Court against Mr. Kozeny, Charles Towers-Clark (a London resident who was managing director of a company allegedly involved in the fraud), Minaret and Oily Rock. On December 17, 1999, the London Court granted a freezing order, known as a *Mareva* injunction, against Mr. Kozeny freezing his assets in England and Wales up to the value of US$ 17 million. In addition, the London Court granted a worldwide injunction against Mr. Kozeny's assets up to the same amount. Second Wyld Affidavit, ¶ 4, Ex. DJCWI. The initial London freezing order covered Mr. Kozeny's assets worldwide, including, specifically, the Aspen property. That order

entered on the basis of papers allegedly showing an intricate fraud scheme in connection with the Azeri privatization vouchers and options that were sold to Plaintiffs National Union and Marlwood by Mr. Kozeny and his companies.

Also on December 17, 1999, Marlwood and National Union obtained an order from the Supreme Court of the Commonwealth of the Bahamas freezing Mr. Kozeny's Bahamian assets up to US$7 million. Second Knowles Affidavit, ¶¶ 3–4. Relying on the evidence submitted in the London proceedings, the Bahamian Court found that evidence sufficient to support the freezing order against Mr. Kozeny. Likewise, on December 23, 1999, the B.V.I. High Court of Justice issued an order placing Minaret and Oily Rock in receivership and freezing their assets.

Subsequently, on February 18 and 19, 2000, parallel actions were filed in London and the Bahamas by the Omega Group. The London and Bahamian courts again reviewed the evidence and determined that a strong *prima facie* showing of fraud existed. As a result, the London and Bahamian courts issued a second set of freezing orders enjoining the dissipation of Mr. Kozeny's assets, worldwide, up to the sum of US$ 160 million. Second Wyld Affidavit, ¶ 4, Ex. DJCW2, Second Knowles Affidavit, ¶¶ 6–7.

Because the London freezing order is not enforceable outside the jurisdiction of the London Court until it is enforced by a court in the relevant country, the London Court permitted this case to be brought in Colorado to freeze Defendants' assets located here. *See* Second Wyld Affidavit, ¶¶ 7–9. In the Colorado case, Plaintiffs seek, *inter alia*, to: 1) enjoin Defendants from disposing of certain assets located in the State of Colorado, including the Aspen home and valuable items of personalty located therein; and 2) collect any judgment obtained against those assets. *See National Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny,* 115 F.Supp.2d 1231 (D.Colo.2000) (Kozeny I) and *National Union Fire Ins. Co. of Pittsburgh, PA. v.*

*Kozeny,* 115 F.Supp.2d 1210 (D.Colo.2000) (Kozeny II).

On February 18, 2000, Plaintiffs filed a Motion for a Temporary Restraining Order, Preliminary Injunction, and Prejudgment Writ of Attachment in this case based, in large part, on the submissions made to the London Court. Also on February 18, 2000, I issued a temporary restraining order against Mr. Kozeny and Defendants Landlocked Shipping Company and Peak House Corporation, prohibiting the dissipation of the assets located in Aspen, Colorado.

After a hearing, on May 22, 2000, I granted Plaintiffs' application to convert the temporary restraining order into a preliminary injunction and extended the order to the Aspen personalty located at the Aspen property. *See Kozeny,* 115 F.Supp.2d 1231. On June 22, 2000, I ruled that a second preliminary injunction should be issued with respect to Defendant Turnstar, the record owner of a large portion of the Aspen personalty. *See Kozeny,* 115 F.Supp.2d 1210.

In the London proceeding, a case management conference was held on April 19, 2000. On June 2, 2000, Mr. Kozeny filed applications to stay the London proceeding, pending resolution of the Colorado case on the grounds that defending in two jurisdictions would be burdensome and Colorado was a more convenient forum. Second Wyld Affidavit, ¶ 11. Mr. Kozeny claimed, among other things, that Colorado had a more substantial and closer connection with the case than did England, and that Plaintiffs had breached the terms of the understanding given to the English Court by bringing their claim in Colorado. *Id.* at ¶ 12. On June 6, 2000, the English court rejected Mr. Kozeny's applications and expressly found that London would be a convenient forum. *Id.* at ¶ 14. Mr. Kozeny then submitted to the jurisdiction of the London Court in the Omega Action. First Wyld Affidavit, Ex. DJCW4.

The Bahamas case is also proceeding, albeit more slowly. In April and May 2000, counsel for Plaintiffs and for Defendants exchanged letters regarding Mr. Kozeny's failure to disclose his assets as required by the Bahamian freezing order. In that correspondence, Mr. Kozeny's counsel urged litigating the asset disclosure issues in London, acknowledging that the Bahamas case is "ancillary" to the English proceeding. In June 2000, Plaintiffs moved for an order joining Turnstar as a defendant and restraining Turnstar from disposing or otherwise dealing with any of its assets in the Bahamas. Second Knowles Affidavit., ¶ 11. The Bahamian court issued this order on July 5, 2000. *Id.* at ¶ 12. According to Plaintiffs, the Bahamian counsel plans to ask the Bahamian court to stay the action pending resolution of the London proceeding. *Id.* at ¶ 13.

London has substantial contacts to this dispute. One substantial, identifiable asset that Mr. Kozeny holds in his own name is a London home worth a reported $11 million where he resides for at least two months each year. *See* Second Wyld Affidavit, ¶ 13. In addition, Mr. Kozeny's wife and children reside in London where his children attend school. *Id.* Moreover, as stated, the operative investment contracts specify that any dispute should be adjudicated in London applying English law. Further, Charles Towers–Clark, the managing director of Minaret and signatory to many of the key documents, resides in London.

## II.

## Motion to Stay Proceedings

### A. Law

██ Federal courts have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction. *See Goldhammer v. Dunkin' Donuts, Inc.,* 59 F.Supp.2d 248, 251–56 (D.Mass.1999); *EFCO Corp. v. Aluma Systems, USA, Inc.,* 983 F.Supp. 816, 824 (S.D.Iowa 1997); *Boushel v. Toro Co.,* 985 F.2d 406, 409–10 (8th Cir.1993). *See gen-*erally *Landis v. American Water Works & Electric Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). However, this inherent power to stay parallel litigation must be balanced against the federal courts' "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

Traditionally, federal courts have shown reluctance to decline jurisdiction in the face of this "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 826, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (question of federal court abstention due to pending litigation in state court).

This obligation to exercise jurisdiction, however, is not absolute. *See Quackenbush,* 517 U.S. at 716, 116 S.Ct. 1712; *Canada Malting Co. v. Paterson Steamships,* 285 U.S. 413, 422, 52 S.Ct. 413, 76 L.Ed. 837 (1932) ("[T]he proposition that a court having jurisdiction must exercise it is not universally true."). *See also Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (federal courts should consider issues of "wise judicial administration, . . . conservation of judicial resources, and comprehensive disposition of litigation").

██ As the Eleventh Circuit has recognized, "in some private international disputes the prudent and just action is to abstain from the exercise of jurisdiction." *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1518 (11th Cir.1994). "[I]n the interests of judicial economy and international relations, a federal court may stay an action in favor of pending foreign litigation." *Abdullah Sayid Rajab Al–Rifai & Sons, W.L.L. v. McDonnell Douglas Foreign Sales Corp.,* 988 F.Supp. 1285, 1291 (E.D.Mo.1997). However, the mere fact that there are parallel proceedings in a foreign jurisdiction will not constitute an "exceptional circumstance" which justifies the abdication of federal jurisdiction. *See*

*Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines,* 925 F.2d 1193, 1194–95 (9th Cir.1991) (reversing stay in absence of exceptional circumstances); *Balcom v. Rosenthal & Co.,* 1998 WL 2835 *7 (N.D.Ill. Jan.2, 1998) (denying stay despite parallel British action where parties were not substantially the same and other *Colorado River* factors were absent).; *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 669 (E.D.Mich.1996) (declining to stay federal action despite a pending proceeding in Germany after weighing *Colorado River* factors).

■ The Tenth Circuit has not addressed the issue of a stay in the event of parallel litigation in an international forum. I am, however, persuaded by the cogent reasoning stated by other federal district courts in developing the following relevant factors in determining whether a stay is warranted: 1) similarity of parties and issues involved in the foreign litigation; 2) the promotion of judicial efficiency; 3) adequacy of relief available in the alternative forum; 4) issues of fairness to and convenience of the parties, counsel, and witnesses; 5) the possibility of prejudice to any of the parties; and 6) the temporal sequence of the filing of the actions. *See Boushel v. Toro Co.,* 985 F.2d at 410 n. 2 (staying federal action in favor of Quebec action); *Abdullah Sayid Rajab Al–Rifai & Sons,* 988 F.Supp. at 1289 (staying federal action in favor of Kuwaiti litigation); *EFCO Corp.,* 983 F.Supp. at 824 (staying federal action in favor of Canadian litigation); *Evergreen Marine Corp. v. Welgrow Intern. Inc.,* 954 F.Supp. 101, 103 (S.D.N.Y.1997) (staying federal action in favor of Belgian litigation).

■ Also pertinent are overarching concerns for a federal court facing concurrent international jurisdiction including demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources. *See Turner,* 25 F.3d at 1518. Accordingly, in determining whether a stay is appropriate in the instant case, I consider the aforementioned factors.

## B. Factors in Determining Motion for Stay

### 1. Similarity of the Two Actions

■ Both this case and the London proceeding involve alleged fraud in the sale of Azeri privatization vouchers and options arising out of agreements entered into between Plaintiffs and Mr. Kozeny. Thus, the issues involved in each case are substantially similar.

Defendants Landlocked, Peak House, and Turnstar are not parties to the London proceeding. Parties need not be identical, however, to warrant a stay of the present case in deference to an earlier action. *Abdullah Sayid Rajab Al–Rifai & Sons,* 988 F.Supp. at 1292. *See also Boushel,* 985 F.2d 406; *Hunt v. B.P. Exploration Co. (Libya), Ltd.,* 492 F.Supp. 885, 902 (N.D.Tex.1980) (stay granted in favor of London suit despite two non-joined "indispensable parties"). Moreover, I have determined, preliminarily, that Landlocked, Peak House, and Turnstar are shell corporations controlled by Mr. Kozeny through which he shelters fraudulently obtained assets. *See Kozeny I,* 115 F.Supp.2d at ——, 2000 WL 1025579 at *3 (Turnstar) and *Kozeny II,* 115 F.Supp.2d 1210, ——, 2000 WL 1025587 at *13 (D.Colo.2000).

### 2. Promotion of Judicial Efficiency

A stay of this action will promote judicial efficiency by placing the parties and claims before a single tribunal, thereby reducing duplicative discovery and litigation. *See Evergreen,* 954 F.Supp. at 104 ("Maintaining two concurrent and simultaneous proceedings [ ] consumes a great amount of judicial, administrative, and party resources for only speculative gain.") *EFCO,* 983 F.Supp. at 824 (staying federal action in favor of Canadian litigation first filed by Plaintiffs). Furthermore, simultaneous adjudications regarding identical

facts and highly similar legal issues creates the risk of inconsistent judgments.

The evidence reviewed by this Court in issuing its preliminary injunction orders was first submitted to the London Court during two *Mareva* injunction hearings. The London Court has shown that it will move its case rapidly. As a result, it is anticipated that the London trial will take place in late 2001. Second Wyld Affidavit, ¶¶ 19–20. In contrast, the earliest trial date realistically available on my docket is sometime in mid–2002.

At issue in the London proceeding is the interpretation of two contracts that are specifically governed by English law. The London Court has already denied Mr. Kozeny's forum *non conveniens* motion requesting that the London Court defer to the Colorado proceeding. Thus, it is fair to assume that the London court views England as the more convenient forum and the preferred site for the trial of the principal action. This factor weighs heavily in favor of a stay to avoid piecemeal litigation, duplicative discovery, and the threat of inconsistent verdicts.

### 3. Adequacy of Relief Available in the Alternative Forum

Plaintiffs are the parties concerned about obtaining relief. Thus, by making this motion, Plaintiffs elect to forgo immediate or quick relief in Colorado. According to Plaintiffs, they prefer to establish the fraud in London before returning to Colorado to obtain a judgment here. By its nature, a stay allows for such a staggered recovery. "The fact that the Court is staying, rather than dismissing, the federal action provides future opportunity for any relief (like multiple damages) not available ... in the English action or precluded by it." *Goldhammer*, 59 F.Supp.2d at 254. This factor also weighs heavily in favor of a stay.

### 4. Fairness and Convenience of Parties, Counsel, and Witnesses

Mr. Kozeny is a party to both litigations and has submitted to the jurisdiction of each court. He resides in London for two months each year and his wife and children live there. One identifiable asset held in Mr. Kozeny's name, his Eaton Square home, is located in London. Thus, it is not unfair to require Mr. Kozeny to litigate this dispute in the London proceeding.

As indicated above, the parties have begun preparing discovery in London and a conference has been scheduled to resolve any pending discovery issues. It is desirable for discovery to take place in a single forum under the supervision of a single court. Otherwise, the parties may be forced to produce the same discovery in different jurisdictions and may be subject to contradictory discovery rulings.

It is true that many witnesses in both actions are located in the United States, including Colorado. However, according to Plaintiffs, the key witnesses testifying on behalf of Plaintiffs will likely be from London, New York, and Azerbaijan. In addition, London is the home of Rajveer Ranawat, one of the key principals involved in deciding to invest in the Azeri privatization options and vouchers and who directed the investigation leading to this litigation. Ranawat Affidavit, ¶¶ 6–7. Thus, either forum will require witnesses to attend trial at considerable distances.

Defendant Landlocked is a Turks and Caicos company that is purportedly owned by a Swiss trust. Defendant Turnstar is a Bahamian company that holds substantial property in the Bahamas and Colorado. While defendant Peak House is technically a Colorado company, no individual, apart from its registered agent, a Florida attorney, has been identified with the company. In addition, Peak House was administratively dissolved by the Colorado Secretary of State.

Under these circumstances, both forums present some inconvenience. However, the London Court's decision that London is a more convenient forum, tips the scales slightly in favor of a stay.

Defendants cite *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in arguing that Plaintiffs must show the London forum to be "substantially more convenient." Kozeny Brief, p. 24, I disagree. The *Moses* Court applied the *Colorado River* test for *dismissal* of an action. Here, Plaintiffs are requesting a stay, a less drastic action.

### 5. Prejudice to the Parties

According to Plaintiffs, the possibility of prejudice from a stay is remote for two reasons: 1) confidence in the process accorded by English courts; and 2) the opportunity to remedy any prejudice at a later stage in the Colorado litigation. As the *Goldhammer* court explained, "[b]ecause the United States and England share the same common law heritage, deference to British proceedings is consistent with notions of international comity." *Id.* at 254–55. *See also Hunt*, 492 F.Supp. at 895.

Defendants respond that they would be prejudiced by a stay because: 1) there is less access to discovery in England than in federal court. *See Goldhammer*, 59 F.Supp.2d at 255; and 2) a stay would deprive Defendants of their opportunity for a jury trial. *See* § 18–17–106(7)(a), C.R.S. These aspects weigh against granting a stay. However, these parties may return to this Court once the London proceedings have concluded. Thus, this reserved opportunity to litigate mitigates the effect of any such potential prejudice. *See EFCO*, 983 F.Supp. at 824–25. *See also Boushel,* 985 F.2d at 408.

While discovery would not be taken in this case during the pendency of the London proceeding, Defendants may still seek documents and testimony from U.S. witnesses under the Hague Convention or under 28 U.S.C. § 1782, which provides for production of documents and taking testimony in aid of foreign litigation. Following resolution of the London proceeding, additional discovery, if necessary, may be sought in this Court on any issues that remain open.

The Corporate Defendants state that if a stay is granted their property will be tied up for an extended period. Plaintiffs, however, have agreed to allow the property to be sold provided the proceeds are put in escrow. Moreover, Defendants are seeking to lease the Aspen house. Also, the enjoined motor vehicles may be operated within the State of Colorado. *Kozeny I*, 115 F.Supp.2d ——, 2000 WL 1025579 at *10. Defendants are protected by the $10 million injunction bond posted by Plaintiffs. Indeed, even if this action were not stayed, the enjoined assets would remain frozen pending judgment in Colorado. Overall, I conclude that this factor tips slightly in favor of a stay.

### 6. Temporal Sequence of the Filing of the Actions

As explained above, Plaintiffs filed the initial litigation in the London Court in December 1999. This action was filed two months later on February 18, 2000. Because the London proceeding was first filed, there are practical advantages to advancing the litigation in that forum. *See Goldhammer*, 59 F.Supp.2d at 255 (English case had developed significantly enough to tip scale in favor of stay). The London Court has invested substantial time managing the litigation of this dispute and has indicated that it plans to move the proceedings quickly to trial. Thus, it is anticipated that the London action will be tried well before the Colorado action. This factor weighs in favor of a stay.

### C. Effect of Colorado Organized Crime and Control Act, § 18–17–106, C.R.S.

Defendants oppose Plaintiffs' motion for stay based, in part, on COCCA § 18–17–106(5) language that "[i]n any action brought under this section, the district court *shall proceed as soon as practicable* to the hearing and determination." *Id.* I do not see this language as an absolute bar to a stay. This statutory language reflects legislative intent to afford courts discretion to assess relevant circumstances. It is

particularly significant that the London case likely will proceed to trial a good deal sooner than the Colorado action. Pertinent also is the fact that Defendants' appeal of the preliminary injunction orders in this case remains pending, in part because the Tenth Circuit has declined to expedite Defendants' appeal.

D. **Effect of *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.***

Relying on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), Defendants argue that the injunctions issued by this Court are not permitted under federal law. I disagree.

In *Grupo,* the Supreme Court held that the federal district court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages because such a remedy was historically unavailable from a court of equity. *Id.* at 333. *Grupo* is distinguishable on at least one significant basis.

The issue in *Grupo* was whether the court could enjoin assets in which the potential judgment creditor had *no* equitable interest. Here, Plaintiffs have presented significant evidence for me to conclude, preliminarily, that at least $9.7 million of Plaintiffs' funds obtained in the Azeri privatization vouchers and options fraud were siphoned into Landlocked, Peak House and Turnstar by Mr. Kozeny for the acquisition and maintenance of the Aspen property. *See Kozeny II,* 115 F.Supp.2d at ——, 2000 WL 1025587 at *20; *Kozeny I,* 115 F.Supp. 2d at ——, 2000 WL 1025579 at *8. Thus, there is a strong nexus between the assets enjoined and Plaintiffs' claims for money damages. *Grupo* is not inconsistent with the preliminary injunctions issued in this case. Taken together, I find and conclude that the factors considered weigh in favor of a stay.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for stay of proceedings is GRANTED pending resolution of the proceedings in the High Court of London; and

2. this stay is subject to this Court's continued jurisdiction to approve and supervise such short term leases as may be entered into by Defendants Landlocked Shipping Company and Peak House Corporation.