**Robert F. GOLDHAMMER and DD UK, Ltd., Plaintiffs,**

v.

**DUNKIN' DONUTS, INC., Defendant.**

No. Civ.A. 98–12568–PBS.

United States District Court, D. Massachusetts.

Aug. 6, 1999.

Cornelius J. Moynihan, Jr., Elizabeth M. Rice, Alida M. Coo, Peabody & Brown, Boston, MA, John M. Bradham, Louis E. Dolan, Jr., Peabody & Brown, Washington, DC, for Robert F. Goldhammer, DD UK Ltd., plaintiffs.

Robert L. Zisk, Thomas M. Finan of Schmeltzer, Aptaker and Shepard, P.C., Washington, DC, Robert A. Murphy, Joan M. Griffin, Casner & Edwards, Boston, MA, for Dunkin Donuts, Inc., defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. *Introduction*

This action involves a dispute over an agreement to sell donuts in England between Dunkin' Donuts, Inc. ("Dunkin' Donuts"), and DD UK, Ltd. ("DD UK"). Dunkin' Donuts brought an action in English court against DD UK on December 22, 1997. When DD UK and Robert F. Goldhammer, a director and majority

shareholder active in management, filed their own action in federal court a year later, Dunkin' Donuts responded with a motion to dismiss or stay the diversity action on international abstention grounds because both actions share overlapping legal and factual issues. After hearing, this Court **DENIES** the defendant's motion to dismiss but stays the proceeding pending the outcome of the parallel first-filed English case.

## II. *Factual Background*

Plaintiff, DD UK, is a privately held corporation formed under the laws of England. The shares are owned, in large part, by two Massachusetts trusts. Robert Goldhammer, a Florida resident, is a director of DD UK and is the beneficiary of about two-thirds of the company's shares. He has outstanding loans of $615,000 to DD UK. Dunkin' Donuts is a Delaware corporation with its principal place of business in Randolph, Massachusetts.

In January 1987, DD UK and Dunkin' Donuts entered into a Multiple License Agreement ("MLA"), which authorized DD UK to develop the Dunkin' Donuts brand of donuts and pastries in London, England, and which set up terms for royalty payments and reporting of sales data. The MLA was negotiated and signed in Massachusetts but provides that it will be construed, interpreted, and governed by English law. According to Dunkin' Donuts, DD UK and Dunkin' Donuts later entered into an unwritten agreement, the branded cases agreement ("BCA"), authorizing DD UK to sell Dunkin' Donuts through free-standing product cases in various commercial outlets like convenience stores and gas stations, rather than the traditional stores. In September 1997, Dunkin' Donuts terminated DD UK's rights in the branded cases business. The disputed facts center around whether a branded cases agreement existed, whether Dunkin' Donuts enticed DD UK and Goldhammer to invest as a franchisee in the British market and then purposefully and deceitfully pushed them out, and whether

DD UK fulfilled its commitments under the various agreements.

On December 22, 1997, Dunkin' Donuts filed suit in English court against DD UK seeking payment of royalties, interest, and other damages arising from the MLA and the BCA. On February 27, 1998, Dunkin' Donuts filed a second suit in English court seeking the same relief in addition to other unpaid royalties. The English court consolidated the two actions on July 24, 1998, and set up a discovery schedule. Three days later, Dunkin' Donuts amended its complaint with a number of allegations regarding the MLA and the BCA. Dunkin' Donuts argued that the MLA could be terminated on five years' notice and that the BCA existed as a separate agreement, which incorporated the payment and reporting terms of the MLA and which could be terminated on reasonable written notice. Alternatively, Dunkin' Donuts argued, the MLA had been "varied" to include the BCA.

DD UK filed its answer and counterclaims on August 21, 1998. DD UK denied liability for any royalties or damages, the ability to terminate the MLA on five years' notice, the existence of the BCA, and, alternatively, the reasonableness of six months notice for termination of the BCA. DD UK also denied that it had breached the MLA, the "varied" MLA, or the BCA, arguing that, in fact, Dunkin' Donuts was in repudiatory breach of the MLA. DD UK counterclaimed that Dunkin' Donuts had breached the implied covenant of good faith and fair dealing, and claimed damages, including lost profits through 2016. On October 5, 1998, discovery had been partially completed in the English case.

DD UK and Goldhammer filed the present action in this court, under diversity jurisdiction, on December 17, 1998. Goldhammer asserts claims against Dunkin' Donuts for fraud and deceit, negligent misrepresentation, and promissory estoppel. DD UK asserts claims against Dunkin' Donuts for breach of contract, breach of the implied covenant of good faith and fair

dealing, promissory estoppel, quantum meruit, unjust enrichment, fraud and deceit, negligent misrepresentation, and violation of Mass.Gen.L. § 93A. These claims arise from the same series of events as those underlying the English claims and counterclaims. Defendant, Dunkin' Donuts, moves to dismiss or stay this action on grounds of abstention based on international comity.

### III. *Discussion*

#### A. *Doctrinal Framework*

 Federal courts have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction. *See Boushel v. Toro Co.,* 985 F.2d 406, 409–10 (8th Cir.1993); *EFCO Corp. v. Aluma Sys., USA, Inc.,* 983 F.Supp. 816, 824 (S.D.Iowa 1997). *See generally Landis v. North Amer. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). However, this inherent power to stay parallel litigation must be balanced against the federal courts' "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

Traditionally, federal courts have shown reluctance to decline jurisdiction in the face of this "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 (1976) (discussing judicial economy considerations in the context of federal court abstention due to a pending litigation in a state court); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14–16, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that a federal court will abstain from exercising jurisdiction because of a pending state court action only in "exceptional circumstances").

 Courts have been hesitant to abrogate this jurisdictional duty in the international context. "[P]arallel proceedings on the same in personam claim should ordi-narily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984) (holding that "only in the most compelling circumstances does a court have discretion to issue an antisuit injunction"); *see also China Trade & Dev. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987) (same); *Cliffs–Neddrill Turnkey International–Oranjestad v. M/T Rich Duke,* 734 F.Supp. 142, 150 (D.Del.1990).

This obligation to exercise jurisdiction, however, is not absolute. *See Quackenbush,* 517 U.S. at 716, 116 S.Ct. 1712; *Canada Malting Co. v. Paterson S.S., Ltd.,* 285 U.S. 413, 422, 52 S.Ct. 413, 76 L.Ed. 837 (1932) ("[T]he proposition that a court having jurisdiction must exercise it is not universally true."); *see also Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (counseling that federal courts should consider issues of "wise judicial administration, ... conservation of judicial resources, and comprehensive disposition of litigation").

 As the Eleventh Circuit recently recognized, "in some private international disputes the prudent and just action is to abstain from the exercise of jurisdiction." *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1518 (11th Cir.1994). "[I]n the interests of judicial economy and international relations, a federal court may stay an action in favor of pending foreign litigation." *Abdullah Sayid Rajab Al-Rifai & Sons v. McDonnell Douglas Foreign Sales Corp.,* 988 F.Supp. 1285, 1291 (E.D.Mo.1997) (citing *Boushel,* 985 F.2d at 410 n. 2). However, the mere fact that there are parallel proceedings in a foreign jurisdiction will not constitute an "exceptional circumstance" which justifies the abdication of federal jurisdiction. *See Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,* 925 F.2d 1193, 1194–95 (9th Cir. 1991) (reversing stay in absence of exceptional circumstances); *Balcom v. Rosenthal & Co.,* No. 96–C6310, 1998 WL 2835,

at *7 (N.D.Ill. Jan.2, 1998) (denying stay despite parallel British action where parties were not substantially the same and other *Colorado River* factors were absent); *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 669 (E.D.Mich.1996) (declining to stay federal action despite a pending proceeding in Germany after weighing *Colorado River* factors).

■ The policies underpinning international abstention case law are rooted in concerns about international comity. "International comity is a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *United States v. Nippon Paper Indus. Co., Ltd.,* 109 F.3d 1, 8 (1st Cir. 1997); *see also Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (" 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its Territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.").

Still open is the question whether the federal courts have the power to *dismiss* an action for damages because of parallel foreign litigation. In the abstention context involving parallel state proceedings, federal courts have power to dismiss or remand cases only where relief being sought is equitable or otherwise discretionary, but they may not do so in common law actions for damages. *See Quackenbush,* 517 U.S. at 719–22, 116 S.Ct. 1712. The "rationale of *Quackenbush* is that damages actions, unlike suits for equitable relief, do not invoke the court's equitable discretion." *DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir.1997). The Eleventh Circuit

concluded that *Quackenbush* did not extend to cases raising the abstention issue in light of concurrent international jurisdiction. *See Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1223 (11th Cir.1999). *But see Abdullah Sayid Rajab Al–Rifai & Sons,* 988 F.Supp. at 1290–91 (applying *Quackenbush* to abstention based on the pendency of a foreign action).

*Quackenbush* does not crisply govern in the area of international abstention because the considerations involved in deferring to state court proceedings are different from those involved in deferring to foreign proceedings. *See Posner,* 178 F.3d at 1223. Abstention implicates constitutionally rooted considerations of federalism and federal supremacy. *See Evergreen Marine Corp. v. Welgrow Int'l, Inc.,* 954 F.Supp. 101, 104 n. 1 (S.D.N.Y.1997); *Brinco Mining Ltd. v. Federal Ins. Co.,* 552 F.Supp. 1233, 1241 (D.D.C.1982). International comity is "more a matter of grace than a matter of obligation." *Nippon,* 109 F.3d at 8. The post-*Quackenbush* debate over the power of the federal court to dismiss an action for damages based on international abstention can be somewhat academic because, as a practical matter, in many circumstances a stay is tantamount to dismissal. *See Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927 ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay ... it presumably concludes that the parallel ... litigation will be an adequate vehicle for the complete resolution of the issues between the parties."). This is particularly true in light of the Uniform Foreign Money–Judgments Recognition Act. *See* Mass.Gen.L. ch. 235, § 23A. *See generally McCord v. Jet Spray Int'l Corp.,* 874 F.Supp. 436, 438 (D.Mass. 1994).

■ The federal trial courts have developed a roster of relevant factors in determining whether to grant a stay because of parallel litigation in a foreign forum: (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of

judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions. *See Boushel,* 985 F.2d at 410 n. 2 (staying federal action in favor of Quebec action); *Abdullah Sayid Rajab Al–Rifai & Sons,* 988 F.Supp. at 1289 (staying federal action in favor of Kuwaiti litigation); *EFCO Corp.,* 983 F.Supp. at 824 (staying federal action in favor of Canadian litigation); *Evergreen,* 954 F.Supp. at 103 (staying federal action in favor of Belgian litigation); *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 884 (S.D.N.Y.1991) (dismissing federal action pending Irish litigation); *Continental Time Corp. v. Swiss Credit Bank,* 543 F.Supp. 408, 410 (S.D.N.Y.1982) (dismissing federal action in favor of Swiss action).

The overarching concerns for a federal court facing concurrent international jurisdiction are demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources. *See Turner,* 25 F.3d at 1518. As will be discussed below, these factors, on the whole, militate in favor of staying the present action pending the outcome of the English action.

## B. *The Balancing*

### 1. *Similarity of Parties and Issues*

■ This factor leans in favor of staying the action. The parties are the same in the two actions with two exceptions. The first distinction is that the parties trade places on either side of the "v." DD UK is a defendant in the English suit and a plaintiff here.

This seems to be a distinction without much difference in this case. The titles "plaintiff" and "defendant" have little significance where there are compulsory counterclaims in each suit. The analysis can just as easily rest on whether the counterclaims of the defendant in the first suit are similar to the affirmative claims of the plaintiff in the second. To do otherwise would be to ignore the admonition of the Seventh Circuit in *Martin v. Graybar,* 266 F.2d 202, 204 (7th Cir.1959), which discussed the appropriateness of antisuit injunctions involving two federal district courts:

> Two simultaneous pending lawsuits involving identical issues and between the same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but° conducive to the orderly administration of justice.

*Id. (cited in Small v. Wageman,* 291 F.2d 734, 736 (1st Cir.1961)); *see also Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1202 (2d Cir.1970) (Friendly, J.); *National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 46 (2d Cir.1961).

The second distinction is that Goldhammer is named separately as a plaintiff in the United States action. However, Goldhammer holds a two-thirds interest in DD UK and, thus, has substantially similar interests to those of DD UK. While a shareholder may have claims independent of the corporation, the parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action. *See Landis,* 299 U.S. at 254, 57 S.Ct. 163 (noting that a court may stay proceedings in deference to another jurisdiction even if parties and issues are not identical); *Caspian,* 770 F.Supp. at 884.

The factual and legal issues in the two cases overlap, although the stated causes of action are different. Most of the issues require a determination of whether certain agreements existed, whether the terms of agreements were satisfied, and whether parties acted in bad faith in the performance of their contractual duties or in terminating the agreements. The fact that a claim sounds in tort rather than in contract does not mean that the factual

issues are so dissimilar that a stay may not be granted. *See id.*

### 2. *Promotion of Judicial Efficiency*

Judicial efficiency militates in favor of staying the action. Allowing this case to go forward in tandem with the English case "would consume a great amount of judicial, administrative, and party resources." *EFCO Corp.*, 983 F.Supp. at 824. Also, "simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments." *Id.* While avoidance of duplicative litigation is not dispositive when determining whether to stay a parallel proceeding, *see Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 50 (1st Cir.1995); *Heibert Rojas–Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir.1991), it is a key factor to be considered, *see, e.g., Brinco*, 552 F.Supp. at 1241 (citing *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236).

### 3. *Adequacy of Relief Available in the Alternative Forum*

Plaintiffs claim that the English court cannot provide adequate relief for a number of reasons. Goldhammer claims that he could not have brought some of his claims in the English action. DD UK argues that there are claims in its complaint in the United States action, including a Massachusetts state statutory claim alleging unfair and deceptive business practices under Mass.Gen.L. ch. 93A, that are not included in its counterclaim in the English action. The fact that the Court is staying, rather than dismissing, the federal action provides future opportunity for any

relief (like multiple damages) not available to DD UK in the English action or precluded by it. *See EFCO Corp.*, 983 F.Supp. at 824–25 (citing *Boushel*, 985 F.2d at 409–10). Also, Mr. Goldhammer's individual claims (i.e., fraud) can be litigated here. Therefore, this factor weighs only slightly in favor of plaintiffs.

### 4. *Convenience of the Parties, Counsel, and Witnesses*

This factor does not favor either party. On the one hand, DD UK is an English company, the parties transacted business in England, they agreed that English law applied to the agreement, and many of the disputed facts are based on conduct occurring in England. With respect to Goldhammer, he decided to go to England to sell his donuts and actively managed the business there. It is not unfair to require an American party to defend and prosecute a case in England where the party has been engaged in "purposeful activity" there. *Hunt v. BP Exploration Co.*, 492 F.Supp. 885, 896 (N.D.Tex.1980). On the other hand, Dunkin' Donuts' principal place of business is Randolph, Massachusetts, and Peter Harwood, the key employee who managed its business in Great Britain, is a Massachusetts resident, as are other potential witnesses. This factor is a draw for both sides.

### 5. *Possibility of Prejudice to Any of the Parties*

Plaintiffs point out that there are serious differences in discovery rules between the two countries. Most notably, plaintiffs claim that the English court does not permit the taking of depositions.[1] Because

---

1. The parties dispute whether depositions are allowed under English procedure. Plaintiffs claim that numerous documents that were located in the United States have been lost, misplaced, destroyed, or taken by Dunkin' Donuts former employees and that depositions are needed to track them down. Plaintiffs assert that depositions are less available in English courts.

England has new civil procedure rules, which appear to apply to any "new step ... to be taken in any existing proceedings on or after 26 April 1999," and which provide procedures for taking depositions prior to trial both within and outside the jurisdiction. Civil Procedures Rules (English) Part I, ¶ 12 (1998). However, as plaintiffs contend, these new English rules are just that—new—and have yet to be used in practice. As the federal

the United States and England share the same common law heritage, deference to British proceedings is consistent with notions of international comity. *Cf. Clarkson Co. v. Shaheen*, 544 F.2d 624, 629–30 (2d Cir.1976) (observing that recognition of a foreign judgment is most appropriate when alien jurisdiction is "a sister common law jurisdiction with procedures akin to our own"); *Brinco*, 552 F.Supp. at 1240 ("Certainly, if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence."); *Manches & Co. v. Gilbey*, 419 Mass. 414, 416, 646 N.E.2d 86 (1995) (enforcing a judgment rendered in Great Britain because there was no showing that the English system lacks procedures compatible with the requirements of due process). The fact that there is less access to discovery in England than in . federal court weighs against staying this action, but only slightly so.

### 6. *Temporal Sequence of the Filing of the Actions*

The sequence of these actions heavily favors a stay of the federal action. The plaintiffs' United States action was filed in December of 1998, four months after DD UK's answer and counterclaim were filed in the English action, and a full year after Dunkin' Donuts filed its first English action in December of 1997. While first-filed status is not dispositive on this point, *see Caspian*, 770 F.Supp. at 885 (deference to the first-filed suit is more important when the same plaintiff initiated both suits), litigation lethargy is an important consideration, *see Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986); *Brinco*, 552 F.Supp. at 1241; *Continental Time Corp.*, 543 F.Supp. at 410.

Furthermore, discovery was first exchanged in the English action in October

of 1998, and although there are disputes over the production of documents, the case is proceeding toward trial. The parties dispute how quickly a trial is likely to happen. Although there is some support for declining motions to stay when the foreign litigation is in its early stages, *see I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. 197, 199 (E.D.Pa.1981), the English case has developed significantly enough to tip the scale on this factor in favor of a stay, *see Caspian*, 770 F.Supp. at 885 (finding that the fact that complaint and answer had been filed, extensive discovery had been completed, and trial was imminent in the foreign action pointed toward a stay of the United States action); *see also Ronar*, 649 F.Supp. at 318; *Brinco*, 552 F.Supp. at 1241–42 (deferring to foreign proceeding which had progressed beyond incipiency through filing of answer); *Continental Time Corp.*, 543 F.Supp. at 409 (dismissing action because, *inter alia*, it was instituted six months after foreign action was brought).

A ledger of the factors that guide the Court's discretion in determining whether to proceed in light of the English action leads to a stay in this action. The similarity of the parties and issues, concerns for judicial efficiency, and temporal sequence weigh strongly in favor of a stay. While discovery rights in England are nascent, the new rules seem to address most of DD UK's problems with document production. Objections to the inadequacy of relief available to DD UK or Goldhammer are cured by a stay, rather than dismissal. Concerns about convenience of the parties and the witnesses are six of one, half dozen of another (to use a particularly apt metaphor in the context of donuts). Finally, notions of international comity are at an apex when parties inject themselves into

---

the economy of another nation for profit, particularly one as close as Great Britain, and then try to extricate themselves from its jurisdiction.

## IV. *ORDER*

For the foregoing reasons, the Court ***DENIES*** the defendant's motion to dismiss (Docket No. 9) but stays the proceeding pending the outcome of the parallel first-filed English case.