**GRAMMER, INC., a Minnesota Corporation, Plaintiff,**

v.

**CUSTOM FOAM SYSTEMS, LTD., a Canadian Corporation, Defendant.**

No. CIV 06–14410.

United States District Court, E.D. Michigan, Southern Division.

March 22, 2007.

Howard W. Burdett, Jr., Mark A. Aiello, Foley & Lardner (Detroit), Detroit, MI, for Plaintiff.

Kristen Isaacson Spano, Nicole S. Kaseta, Miller, Canfield (Detroit), Detroit, MI, for Defendant.

## OPION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY

FEIKENS, District Judge.

Custom Foam Systems, Ltd. (CFS) moves this Court to dismiss or stay this

action brought by Grammer, Inc., because there is pending litigation over the same facts in the Ontario Superior Court of Justice, and the litigation in that court was filed first. I agree with CFS that the case in Canada is parallel to the case brought in this Court, and hereby GRANT its motion to STAY this case pending resolution of the parallel proceeding pending in Canada.

## I.  FACTUAL BACKGROUND

CFS, a Canadian corporation, and Grammer, a Minnesota corporation with a place of business in Oakland County, Michigan, are manufacturing companies who sell vehicle parts to the automotive industry. (Notice of Removal ¶ 3(a) & (b); Mot. to Dismiss or Stay 2.) In 2001, Grammer approached CFS regarding a project to build the $300 Static Seat ("the Seat"), a seat to be used in tractors. (Canadian Compl. ¶ 4.)[1] Grammer sought to include CFS due to its expertise in manufacturing "fabricated and molded polyurethane foam components." (*Id.*) Grammer issued several purchase orders to CFS for various types of tooling for the Seat. (United States Compl. ¶¶ 7 & 8.) Then, in January of 2002, a blanket purchase order was issued by Grammer to CFS "for the production of Seats as released by Grammer" that indicated the price per Seat would be $20.80. (*Id.* at ¶¶ 9 & 10.) The parties dispute the effect of the purchase order: CFS claims it obligated Grammer to purchase 60,000 Seats from it, (Canadian Compl. ¶ 13,) while Grammer claims it had no such obligation or, in the alternative, that CFS breached the agreement that existed. (United States Compl. ¶ 12.) CFS continued to devote resources to producing the Seats it believed Grammer was obligated to purchase between 2003 and

2005. (Canadian Compl. ¶ 18.) Grammer issued several purchase orders for significantly fewer Seats throughout the next two years, but CFS refused to sell these Seats to Grammer unless the price per Seat was increased from that named in the blanket purchase order of January 2002. (United States Compl. ¶¶ 22 & 23.) The parties also dispute their responsibility for the risks of investment; Grammer asserts that each party knew it bore its own costs of investment, (*id.* at ¶ 25,) while CFS claims it incurred the costs of this project with reliance on the agreement between the parties that Grammer would purchase the amount of units required of it by the January 2002 blanket purchase order, and that Grammer requested CFS take the steps which caused it to incur its costs. (Canadian Compl. ¶ 15.)

On June 29, 2006, CFS filed suit against Grammer in the Ontario Superior Court of Justice. (Mot. to Dismiss or Stay Ex. 1.) In its Statement of Claim, CFS alleges that "the parties entered into an agreement ... whereby it was agreed they would work together on the project and that [CFS] would be compensated for its efforts in developing the product and the facilities to manufacture same by way of a long-term supply arrangement with [Grammer]." (Canadian Compl. ¶ 7.) CFS alleges that it "took the necessary steps to ensure it would be in a position to complete production of the seat cushions ... in accordance with its agreement with [Grammer]." (*Id.* at ¶ 11.) These steps were undertaken at "significant cost[ ]" to CFS. (*Id.* at ¶ 15.) After three years of work on the project, "[Grammer] advised [CFS] that it did not intend to compensate [CFS] for any of the costs" it had incurred. (*Id.*

---

1. For the sake of clarity, I cite the Statement of Claim in the Canadian action as "Canadian Complaint" and the complaint filed in Oakland County as "United States Complaint."

The Canadian Complaint was filed with this Court as Exhibit 1 to CFS's Motion to Dismiss or Stay, and the United States Complaint is Exhibit 2 to that same motion.

at ¶ 19.) CFS makes three claims against Grammer which it states "further or in the alternative:" (1) that Grammer "breached its agreement . . . by failing to bring the product to market and otherwise by failing to compensate [CFS] for its costs associated with the project," (*id.* at ¶ 21,) (2) that Grammer "breached its contract with [CFS] by failing to honor the terms of the purchase order issued in January 2002," (*id.* at ¶ 22,) and (3) that Grammer "is liable to [CFS] for the costs [CFS] incurred on the project on the basis of [Grammer's] negligent or intentional misrepresentations regarding the project." (*Id.* at ¶ 24.) CFS claims damages of $786,445.00,[2] and requests interest and costs. (*Id.* at ¶ 1.) Grammer answered this Statement of Claim in Ontario court on September 13. (Mot. to Dismiss or Stay Ex. 3.)

On August 25, however, Grammer filed its own suit against CFS in Oakland County Circuit Court. (Mot. to Dismiss or Stay Ex. 2.) Grammer acknowledged when it filed this action that an action "arising out of the same transaction or occurrence" as the subject of its Complaint was pending in the Ontario Court of Justice. (*Id.* at 1.) In this Complaint, Grammer recites facts similar to those recited by CFS. Two claims for relief, stated in the alternative, are made in this Complaint: (1) a Declaratory Judgment that Grammer "has no obligations or commitments to CFS for the Seats other than those obligations or commitments set forth in the purchase orders . . . [and] that it has not breached any obligations to CFS and is not obligated to reimburse CFS for any of its alleged development or capital expenses," (United States Compl. ¶ 39(a) & (b),) and (2) "if . . . there existed a contract pursuant to which Grammer was obligated to purchase and CFS was required a certain volume of Seats pursuant to the subject blanket purchase order, then CFS breached said contract by refusing to deliver the Seats conditionally ordered by Grammer." (*Id.* at ¶ 41.) A jury demand was made in this Complaint. (*Id.* at 6.)

The action filed by Grammer in Oakland County Circuit Court was removed to this court by CFS on October 6.[3] Ten days later, CFS moved to dismiss or stay this case. I have determined oral argument is unnecessary for this motion, so I decide it "on the briefs." [4] (*See* E.D. Mich. LR 7.1(e)(2).)

## II. ANALYSIS

### 1. Rule for Declining Jurisdiction when the Court has Jurisdiction

██ A federal court has a "virtually unflagging obligation" to exercise the jurisdiction bestowed upon it. *Colorado River Water Conservation Dist. et al. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This obligation should be avoided in only a few "extraordinary and narrow" circumstances. (*Id.*) Federal courts have extrapolated

---

**2.** I assume this amount is in Canadian currency, but it is not specifically indicated. Regardless, by the current exchange rate, approximately $1 U.S. = $1.17 Canadian (Wall St. J. Mar. 2, 2007, at C14,) this amount well exceeds the $75,000 amount in controversy requirement for diversity jurisdiction in this court, so the amount claimed is irrelevant to this motion.

**3.** Service of this Complaint was made on CFS on September 11, 2006. (Mot. to Dismiss or Stay 6.) Thus, removal is not time-barred despite the fact that the case was removed more than thirty days after the action was filed in state court; it was removed within thirty days of service on the defendant. 28 U.S.C. § 1446(b).

**4.** After I cancelled oral argument in this case, I granted Grammer's motion to file a sur-reply brief on this motion. (Docket No. 14.) CFS filed a response to Grammer's sur-reply I have also considered in this opinion.

eight factors to consider when determining if they should refuse to exercise their own jurisdiction in favor of permitting another sovereign to exercise its own jurisdiction over a parallel proceeding. These include: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206–07 (6th Cir.2001) quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir.1998). No one of these factors is determinative. *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. The threshold question before considering any of these eight factors, however, is whether the two proceedings at issue are parallel. *Romine*, 160 F.3d at 339. If they are not parallel, *Colorado River* abstention is inappropriate. (*See id.*)

This doctrine is almost always used in situations where the parallel proceeding is in a state court, but is applied in the same manner when a federal court proceeding is parallel to a court proceeding in a foreign country.[5] *See Finova Capital Corp. v. Ryan Helicopters USA, Inc.*, 180 F.3d 896, 898 (7th Cir.1999). This is despite the argument of some courts that abstention in favor of state courts is a matter of the bounds of a federal court's power, while abstention in favor of a foreign court is "more a matter of grace than a matter of obligation." *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F.Supp.2d 248, 252 (D.Mass. 1999).

### 2. The Canadian action and This Action are Parallel

■ The Canadian action and the case before me are parallel proceedings. The Sixth Circuit has taught that "[e]xact parallelism is not required; it is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (internal citations omitted); *see also Finova Capital Corp.*, 180 F.3d at 899 ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora."). These two actions are substantially similar. The principal issue in both actions is the same set of commercial transactions that occurred between the same two parties, and the resolution of the contractual rights and duties in either of the pending cases will likely resolve the issues in the other case. *See Blake v. Graphic Press, Inc.*, No. 05–71932, 2005 WL 1801990, at *4 (E.D.Mich. July 27, 2005) (Cohn, J.) (finding proceedings to be "substantially similar because both cases seek to establish the parties' rights and obligations under the employment contract").

---

**5.** There appears to be a split of the circuits on this issue. The Seventh and Eleventh Circuits appear to agree with the rationale given in *Finova*. The Eighth Circuit, however, seems to have created a new test in dicta for abstention in international cases, with the following factors: "[1] the similarity of the two actions, [2] the degree of progress already made in the [foreign] action, [3] the adequacy and appropriateness of the [foreign] forum, ... [4] notions of international comity[,] and [5] [notions of] judicial efficiency." *Boushel v. Toro Co.*, 985 F.2d 406, 409 n. 2 (8th Cir.1993) cited in *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F.Supp.2d 248, 252–53 (D.Mass.1999). I will apply the standard *Colorado River* analysis in this case, however, as I find that test to be better supported by precedent and because I believe it to be the more rigorous standard.

Grammer's contention that the cases are not parallel should fail. Grammer asserts that the relief CFS seeks is not contractual in nature, but appears to be from "alleged misrepresentations" and "something resembling negligence," while there is no indication that CFS seeks contractual damages such as lost sales. (Pl. Resp. Br. at 7.) Grammer asserts its claim is for a declaration on its liability under all the purchase orders, and it seeks its own damages for CFS's breach of the blanket purchase agreement. (*Id.*) These distinctions are insufficient to find the cases are not parallel. Although the phrasing may be different, it is clear that CFS asserts in the Statement of Claim filed in Ontario that it believes there was an "agreement," or contract, between the parties. (Canadian Compl. ¶ 21.) CFS further asserts that Grammer did not live up to its end of the bargain, which caused CFS damage in a particular amount. (*Id.*) The fact that CFS did not specifically claim lost profit damages is not dispositive that its claim does not sound in contract; plaintiffs in contract cases may recover damages that are only remediary to what they actually spent if they so wish.

The presence of count 2 in the United States action also does not make these cases non-parallel. The only aspect of count 2 for which a colorable argument can be made that it is not parallel to the claims already filed in Canada is the claim for damages by Grammer; if Grammer is liable to CFS under the contract or neither party owes damages to the other, then the result of that claim is perfectly aligned with the claims in the Canadian court. However, there is nothing on the face of the Canadian pleadings that show that Grammer can recover damages in that action if CFS breached the contract. This portion of Grammer's claim is a textbook example of a counterclaim, which Canadian courts permit. (Courts of Justice Act, R.S.O.1990, c. C.43, s.1.; *see also* Ontario

R. Civ. P. 27.) The fact that Grammer did not make this counterclaim in the Canadian court does not give it the right to bring the entire proceeding into United States court, as the requirement for abstention purposes is not that the cases be precisely parallel, but "substantially similar." These actions perhaps would fail to meet the standard if precise parallelism was required, but they certainly are substantially similar. (*See* Def't Resp. to Sur–Reply Br. 2–3.) Thus, the parallelism requirement is met.

### 3. Abstention From this Case is Appropriate

■ I abstain from exercising jurisdiction over this proceeding prior to the cessation of the pending parallel proceeding in Canada. Under Sixth Circuit law, eight factors determine whether a federal court should abstain in favor of another court's jurisdiction. *PaineWebber,* 276 F.3d at 206–07; *see supra* III.1. These factors are to be considered in total; no one is dispositive of the inquiry. *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236; *see also Paine-Webber,* 276 F.3d at 206–07. "[T]he decision whether to dismiss a federal action because of parallel ... litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ After applying the eight factors, I find abstention by this Court to be appropriate. The first factor is inapposite to this case because there is no property of which the court might take possession, and therefore the factor supports my exercising jurisdiction. *PaineWebber,* 276 F.3d at

207. The second factor is a wash;[6] neither Michigan nor Canada seems particularly convenient or inconvenient to either party as witnesses are in both locations.[7] The third factor supports my declining jurisdiction, as there is a certainty of piecemeal litigation occurring if this Court exercises its jurisdiction. *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) ("Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results."). The fourth factor very slightly supports my declining to exercise jurisdiction, as the action in Canada was filed approximately two months before this action. The fifth factor supports my declining to exercise jurisdiction, as there is no federal law at issue here. This is a contract dispute; either Canadian law or the law of one of the states will be applied,[8] and there is no federal interest to protect.[9] The sixth factor is a point of great dispute between the parties, so I will address that in a separate paragraph. The seventh factor pushes in favor of this Court declining to exercise its jurisdiction, as the Canadian

proceeding is ready to proceed with discovery and the United States proceeding has yet to have an answer filed. (Mot. to Dismiss or Stay Ex. 6.) Both courts have concurrent jurisdiction, so the eighth factor is a wash.

The dispute over the sixth factor is predominantly about whether Grammer's rights will be adequately protected in Canadian court where there is no constitutional guarantee of a jury trial. Grammer did make a jury demand in the state court upon bringing this action, (United States Compl. 6,) and argues in its brief that its right to that jury will be denied if its claims are only heard in Canadian court. (Pl.Resp.Br.7–10.) CFS replies that there is a procedure for requesting a jury in Canada, and that Grammer failed to follow that procedure in the Canadian action when it had the chance to do so by failing to make a jury demand before the close of the pleadings. (Reply Br. 2–3 citing R.S.O.1990, c. C. 43, s. 108.) CFS also cites a case from a district court in California where Canada's different use of a jury trial was deemed an insufficient reason to

6. Because the presumption is that this Court exercise its jurisdiction, factors that are a wash between the parties effectively act to support this Court's exercise of jurisdiction. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927 (finding presumption is "heavily weighted in favor of the exercise of jurisdiction").

7. Grammer has submitted a document it claims to have served upon CFS with its amended purchase orders. (Pl.Resp.Br.Ex. M.) This document contains a forum selection clause, indicating that CFS consented to jurisdiction in Michigan, and a clause indicating Michigan law would govern the purchase order. (*Id.* at ¶ 29.) This clause fails to influence my decision for two reasons. First is the fact the clause does not indicate any exclusivity of the courts in Michigan. When Grammer consented to jurisdiction in the Ontario Superior Court of Justice through answering the Canadian Complaint, two courts had jurisdic-

tion over this matter and neither could claim exclusivity. Second, the paragraph Grammer claims permits this Court to exercise jurisdiction explicitly states that any disputes will be settled by arbitration. (*Id.*) For each of these reasons, this clause does not impact my analysis.

8. This is an open question due to the factual dispute between the parties of the applicability of the choice of law clause selecting Michigan law to govern the agreement. (*See* Pl. Resp. Br. 10–11; Def't Reply Br. 4.) Regardless of the outcome of that dispute, federal law will not be applied.

9. If any federal interest existed, it would be the promotion of judicial comity. *See Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986) ("International judicial comity is an interest not only of Belgium but also of the United States.").

refuse to find the Canadian courts were an adequate alternative forum to hear the case. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F.Supp.2d 1194, 1207 (C.D.Cal.2000). No cases are cited by Grammer to show that the Canadian judicial system is an unacceptable alternative forum due to its jury practice, but Grammer does cite cases where a United States court refused to surrender jurisdiction in light of actions in foreign countries when the foreign forum did not recognize several rights and defenses under United States law,[10] and a case where the California Supreme Court refused to stay a proceeding in its state when a parallel proceeding was occurring in Mexico because notions of comity were not binding upon it.[11] (Pl. Resp.Br.9–10.)

I find the sixth factor counsels that this Court decline jurisdiction. Numerous courts have found the Canadian justice system comports with our notions of due process and fair play. *See, e.g., Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F.Supp. 1233, 1240 (D.D.C.1982) ("Certainly, if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence.") (internal citations omitted); *Callaway Golf Corp.*, 125 F.Supp.2d at 1207 (refusing to find in personal jurisdiction analysis that Canada was not an adequate alternative forum because it did not guarantee jury right); *see also Goldhammer v. Dunkin' Donuts, Inc.*, 59 F.Supp.2d 248, 254–55 (D.Mass.1999) ("Because the United States and England share the same common law heritage, deference to British proceedings is consistent with notions of international comity."). The fact that Canada does not guarantee a jury right in the same way the United

States does supports this Court's exercise of jurisdiction, but in my opinion not sufficiently strongly to outweigh the remaining evidence that the Canadian courts comport with American notions of due process and are therefore capable of protecting the rights of United States litigants in contractual disputes with Canadians. Thus, I find the sixth factor in favor of this Court declining to exercise its jurisdiction.

For all of these reasons, I ABSTAIN from hearing this case before the conclusion of the pending parallel action in Canada.

### 4. Proper Remedy is to Stay Proceeding, Not Dismiss

■ I choose to STAY this action instead of dismissing it. The Supreme Court has taught that when a federal court abstains in favor of a state court, entering a stay in the federal action is preferable to dismissing the action because the stay makes it easier for the federal court to resume its jurisdiction over the case should the state court to which it is deferring fail to decide the case for some reason. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n. 2, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.") (citations omitted); *see also Finova Capital Corp.*, 180 F.3d at 900 (identifying entry of a stay instead of dismissal as a "more measured step"). I do not see any reason this remedy should not likewise

---

**10.** *Waterman Steamship Corp. v. Chubb & Son Inc. et al.*, No. 93–CV–2820, 1994 WL 50233, at *3–4, 1994 U.S. Dist. LEXIS 1645, at *9–12 (E.D.La. Feb. 14, 1994) (expressing concern that Egyptian law would strip United States

plaintiff of rights under contract being litigated).

**11.** *Pesquera del Pacifico v. Superior Court for San Diego County*, 89 Cal.App.2d 738, 201 P.2d 553, 554–55 (Cal.1949).

be applied to abstention in favor of a foreign court. The idea appears to be the same: this Court does not act on the case while another court is acting within its sovereign jurisdiction, but should the other court not decide the issue for some reason, this Court can resume its jurisdiction over the case to hear and decide it. Should the foreign court come to a resolution on the issue, that resolution will be res judicata, and this action should then be dismissed. Thus, I STAY the proceeding instead of dismissing the case at this time.

## III. CONCLUSION

For the abovementioned reasons, I GRANT Defendant's motion and STAY this case pending completion of the Canadian action.

**IT IS SO ORDERED.**