**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 28 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
MARLWOOD COMMERCIAL, INC.,
OMEGA GROUP HOLDINGS, LTD.,
PINE STREET INVESTMENT LTD.,
PINFORD PORTFOLIO INC.,
HELENDALE TRADING CORP.,
TELOS FINANCE LTD.,

        Plaintiffs-Appellees,

v.

VIKTOR KOZENY, LANDLOCKED
SHIPPING COMPANY, PEAK HOUSE
CORPORATION, TURNSTAR
LIMITED,

        Defendants-Appellants.

Nos. 00-1226, 00-1233, 00-1257
(D.C. No. 00-B-383)
(Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**REAVLEY**,[**]
Senior Circuit Judge.

---

     [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

     [**]Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals, Fifth Circuit, sitting by designation.

On February 18, 2000, plaintiffs-appellees filed the present action in the United States District Court for the District of Colorado. A first amended complaint was filed on May 4, 2000, and a second amended complaint was filed on September 25, 2000. Plaintiffs-appellees are National Union Fire Insurance Company of Pittsburgh, PA; Marlwood Commercial, Inc.; Omega Group Holdings Ltd.; Pine Street Investment Ltd.; Pinford Portfolio Inc.; Helendale Trading Corp.; and Telos Finance Ltd., hereinafter referred to collectively as the "plaintiffs," or by name. The named defendants are Viktor Kozeny, described in the Second Amended Complaint, hereinafter referred to as the "complaint," as a "Czech-born private financier who travels under Irish and Grenadian passports and has residences at: Lyfold Cay, New Providence, Bahamas; London, England; and Aspen, Colorado." Also named as defendants in the complaint were Landlocked Shipping Company ("Landlocked"); Peak House Corporation ("Peak House"); and Turnstar Limited ("Turnstar"), all of which were alleged to be under the "management and control" of Kozeny. It is alleged, *inter alia,* in the complaint that "Kozeny's assets include a $27 million dollar house in Aspen, Colorado, known as 'Peak House' (2137 Red Mountain Road, Aspen, Colorado 81611), the title of which is held by defendant Landlocked Shipping Company, but which is beneficially owned by Kozeny (the 'Aspen home' or 'Aspen property')." Kozeny's assets were also said to include millions of dollars of personalty ('the Aspen personalty') located in the Aspen home

- 2 -

which were beneficially owned by Kozeny but believed to be held in the name of Turnstar (which also holds title to one of Kozeny's Bahamas homes). Peak House was alleged to be the manager and operator of the Aspen property.[1]

In 1995, the Republic of Azerbaijan announced a program for the privatization of most of its state owned enterprises and in connection therewith issued "options" and "vouchers" that could be redeemed for an interest in such enterprises. From the complaint we learn that Kozeny allegedly began to purchase these options at 40c per option. The Azeri government increased the option price to $25 and limited the number of options any foreign landowner could hold. Kozeny then began selling his previously acquired options to others, including the Plaintiffs, at $25 per option. The complaint is 64 pages in length and sets forth the background of this controversy in great detail. The gist of the complaint is that the plaintiffs gave approximately $140 million dollars to Kozeny with which to purchase those options, that Kozeny transferred much of this

---

[1] The initial complaint filed on February 18, 2000 named as Defendants Kozeny, Landlocked and Peak House and asserted seventeen claims for relief. The first four claims were diversity claims under Colorado Organized Crime Control Act ("COCCA"), C.R.S. §§ 18-17 104(1)-(4). Two claims were based on the Securities Exchange Act, 15 U.S.C. § 78j(b). Eleven claims were state claims with jurisdiction apparently based on 28 U.S.C. §1367. The first amended complaint filed on May 4, 2000 named as defendants Kozeny, Landlocked, Peak House and Turnstar and set forth twenty-one claims for relief. The first five claims were diversity claims based on COCCA. Two claims were based on the Securities Exchange Act. The remaining fourteen claims were state claims with jurisdiction apparently based on 28 U.S.C. §1367. The second amended complaint filed on September 25, 2000 was the same as the first amended complaint but added an additional, or twenty-second, claim against all four defendants based on Racketeer Influenced and Corrupt Organizations, ("RICO"), 18 U.S.C. § 1961, *et seq.*

money to his "shell" corporations, and that in connection therewith Kozeny committed a fraud upon the plaintiffs.

As indicated, the complaint sets forth twenty-two claims for relief. Five claims were diversity claims based on the Colorado Organized Crime Control Act ("COCCA") C.R.S. §§ 18-17 104(1)-(4); one was based on Racketeer Influenced and Corrupt Organizations, ("RICO"), 18 U.S.C. § 1961, *et seq.*; two were based on violations of Section 10(b) of the Securities Exchange Act; and fourteen claims were based on state law for civil conspiracy, breach of fiduciary duty, breach of fiduciary duty based on a confidential relationship, tortious interference with a contract, fraud based upon false representation, fraud based on non-disclosure or concealment, aiding and abetting fraud, fraudulent transfer, negligent misrepresentation, inducement of a breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, unjust enrichment, constructive trust, and accounting.

In their prayer for relief, the plaintiffs asked for a money judgment against the defendants in an amount to be determined before a jury, and, in connection with their twenty-first claim for relief wherein the plaintiffs ask for a constructive trust, the plaintiffs sought the following:

> On the Twenty-First Claim for Relief, enter judgment against Viktor Kozeny, Landlocked Shipping Company, Peak House Corp. and Turnstar Limited imposing a constructive trust over all the funds from the proceeds of any sale of the Aspen property, the Aspen personalty and any other property or funds held by or under the control of Peak House Corp.,

Landlocked and/or Turnstar Limited, pending the final hearing in this action, issuing an order of attachment, temporary restraining order and preliminary injunction and temporary restraining order freezing all such funds and assets, in order to preserve the <u>res</u> over which Plaintiffs seek to impose the constructive trust, together with interest, attorneys' fees in the trial and appellate courts, and costs of investigation and litigation reasonably incurred.

As stated, the initial complaint was filed on February 18, 2000, and on that same date the plaintiffs applied for an *ex parte* temporary restraining order which was immediately issued against Kozeny, Landlocked and Peak House concerning the Aspen real property. On May 12, 2000, the district court held an evidentiary hearing on plaintiffs' further request for a preliminary injunction. On May 16, 2000, the district court granted plaintiffs' motion for a preliminary injunction and enjoined Kozeny, Landlocked and Peak House from selling, transferring, conveying, encumbering, leasing or otherwise disposing of the Aspen real property, except by agreement with the plaintiffs or by further order of the court. The order of May 16, 2000, was followed by formal and detailed "Findings of Fact, Conclusions of Law and Order" filed on June 12, 2000. The latter now appears as *National Union Fire Insurance Company of Pittsburgh, Pa., et al, v. Kozeny, et al,* 115 F.Supp. 2d 1210 (D. Colo. 2000) (hereinafter *Kozeny I*).

Turnstar was not a named defendant in the initial complaint filed on February 18, 2000. In the first amended complaint filed on May 4, 2000, Turnstar was added as a party defendant and at an evidentiary hearing held on June 22, 2000, the district court granted plaintiffs' motion for a preliminary injunction and enjoined Turnstar from disposing of

the personalty located in the Aspen real property. On June 23, 2000, the district court filed separate "Findings of Fact, Conclusions of Law and Order" relating to its preliminary injunction against Turnstar, which now appears as *National Union Fire Insurance Company of Pittsburgh, Pa., et al, v. Kozeny, et al,* 115 F.Supp.2d 1231 (D. Colo. 2000) (hereinafter *Kozeny II*).

Landlocked and Peak House jointly filed a timely notice of appeal to *Kozeny I* (our appeal No. 00-1226). Kozeny filed a separate notice of appeal to *Kozeny I* (our appeal No. 00-1233). Turnstar filed a notice of appeal to *Kozeny II* (our appeal No. 00-1257). All four defendants challenge in this Court the district court's preliminary injunctions.[2]

Kozeny, Landlocked and Peak House filed a joint opening brief in this court on

---

[2]On September 25, 2000, the district court, after hearing, granted plaintiffs' motion to stay further proceedings in the action brought in the United States District Court pending the outcome of certain proceedings previously filed and then pending in the English High Court of Justice. In connection with the latter, it appears that on December 17, 1999, Marlwood Commercial Group filed an action in London courts against Kozeny, Charles Towers-Clark, Minaret Group, Ltd, and Oily Rock Group, Ltd. (Landlocked, Peak House and Turnstar were not parties to the London proceeding.). In that proceeding, the London court on December 17, 1999, granted an order freezing Kozeny's assets in England and Wales, which order was later extended to a world-wide freeze of Kozeny's assets, and which identified by name the Aspen property. See *National Union Fire Insurance Company of Pittsburgh, Pa. v. Kozeny,* 115 F.Supp. 2d 1243 (D. Colo. 2000)(*Kozeny III).* The defendants filed notice of appeal from the district court's stay order. In connection therewith, defendants also brought a mandamus proceeding in this court, asking us to vacate the district court's stay order and direct the district court to hear the case forthwith. In that mandamus proceeding we held, as a preliminary matter, that the district court's stay order was not, under the circumstances, appealable but then held that mandamus was not warranted. *In re Kozeny,* 236 F.3d 615 (10th Cir. 2000). It would appear that the defendants later dismissed their direct appeal of the district court's stay order.

October 17, 2000.  In that brief, counsel framed the "Issues Presented For Review" as

follows:

> I.  Did the district court err in holding it had authority under the  Colorado Organized Crime Control Act ("COCCA") to issue     an asset-freezing injunction for the purpose of securing         satisfaction of a potential judgment in a foreign case in             which COCCA claims cannot be asserted?
>
> II.  Did the district court err in implicitly holding that one individual and three entities can form an "association-in-fact" enterprise under COCCA even though "enterprise" as defined by the statute includes associations of individuals only?
>
> III.  Did the district court err in holding it had federal subject matter jurisdiction when Plaintiffs' intent was to use this action solely to freeze assets for the purpose of securing satisfaction of a potential foreign judgment?

Thereafter, Turnstar filed its own opening brief on October 25, 2000, in which it

"adopted" the issues raised by its co-appellants, Kozeny, Landlocked and Peak House,

and in addition thereto framed two other issues, as follows:

> A. Did the district court err in holding that plaintiffs must only  make a prima facie showing of personal jurisdiction over Turnstar Limited when seeking a preliminary injunction  against Turnstar Limited?
>
> B.  Did the district court err in exercising personal jurisdiction over Turnstar Limited?

I

As indicated, the district court on May 16, 2000 granted plaintiffs' motion for a

preliminary injunction and entered an order enjoining Kozeny, Landlocked, and Peak House from selling, transferring, conveying, encumbering, leasing or otherwise disposing of the Peak House real property until further order of Court. Plaintiffs were at the same time ordered to post security in the amount of $10,000,000.00. The order of May 16 was followed by a 30-page Findings of Fact, Conclusions of Law and Order filed by the district court on June 12, 2000 (*Kozeny I*). The injunction was based on COCCA.

On appeal, defendants' first, and they say their basic, argument is that the district court erred in granting the preliminary injunction because it was entered only for the purpose of seeking a local satisfaction of a potential judgment that might in the future be entered in the London proceeding, a forum where a COCCA claim could not be asserted. In response thereto, the plaintiffs assert that the purpose of their Colorado action was not to secure Colorado assets which could be used to satisfy a possible judgment entered in the London proceeding, but to freeze Colorado assets which could be used to satisfy a possible judgment entered in the Colorado proceedings. They point out that only one of the four defendants in the Colorado action (Kozeny) is a party to the London proceedings. Plaintiffs also note that the first five claims in their Colorado complaint are based on COCCA, and are directed against Landlocked, Peak House and Turnstar, as well as Kozeny. Plaintiffs then state that after the London proceeding is completed, and the stay order in the Colorado proceeding is lifted, they intend to pursue their COCCA claims through to judgment against all four defendants.

In support of their argument that the only purpose of the Colorado freeze order was to secure local assets to satisfy a foreign judgment, counsel relies, in part, on statements made by the district court on May 12, 2000, when it granted a preliminary injunction. It is true that on that occasion the district court said: "Consequently, the real thrust or objective of the Plaintiffs here, at least at this juncture as I understand it, is maintenance of the status quo so that in the event the Plaintiffs prevail in the case before the British Court in London there will be assets to which the Plaintiffs may look [sic] secured in the State of Colorado." At a hearing on June 22, 2000, the district court also stated that the London judge "understands that what we're doing here is to, quote 'hold the ring,' unquote. Quite true."

Be all that as it may, we are here concerned with an appeal from the written judgment entered by the district court on June 12, 2000 (*Kozeny I*). We think a fair reading of that order clearly indicates that the district court entered its freeze order under the authority of COCCA to secure assets to satisfy any judgment entered in the Colorado proceeding against Kozeny, Landlocked, or Peak House. For example, the district court found that the plaintiffs have shown that there is a substantial likelihood that they will prevail on the merits of all five of their COCCA claims against Kozeny, Landlocked, and Peak House. *Kozeny II,* 115 F.Supp. 2d at 1230.

In short, we reject defendants' assertion that the only reason, or the real reason, for the freeze order in the Colorado proceeding was to secure assets to satisfy a potential

judgment in the London proceedings.  A reading of *Kozeny I* forecloses that argument.

II

In their joint brief, Kozeny, Landlocked, and Peak House urge the following as their second ground for reversal of the preliminary injunction order: the district court erred in finding that the plaintiffs "proved a substantial likelihood of establishing the required COCCA enterprise."  In connection therewith they first argue that C.R.S. §18-17-104 requires that before COCCA can be invoked there must be proof of a pattern of racketeering which requires an enterprise as defined by § 18-17-103(2).  An enterprise can be an "association-in-fact enterprise" which defendants argue must consist of individuals only, and may not consist of "individuals and entities."  Defendants then point out that the "association-in-fact" alleged in the complaint is between Kozeny and three entities, namely Landlocked, Peak House and Turnstar. C.R.S. §18-17-103(2) reads as follows:

> 'enterprise' means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities.

C.R.S. §18-17-103(4) defines a "person" as "any individual or entity holding or capable of holding a legal or beneficial interest in property" and based thereon the district court held that Kozeny, Landlocked, and Peak House are "persons" under that definition.

- 10 -

*Kozeny I*, 115 F.Supp. 2d at 1226. We are not inclined to disturb the district court's understanding of C.R.S. §§ 18-17-103(2) and (4).  Nor are we impressed with defendants' related argument that since Kozeny allegedly has some degree of control over Landlocked, Peak House and Turnstar there was only one person involved in the association-in-fact enterprise, namely Kozeny.

III

Defendants' third ground for reversal is that the district court lacked federal subject matter jurisdiction, that it should have dismissed the action for lack of jurisdiction and that, such being the case, a preliminary injunction should not have been entered and should now be dissolved.  On August 1, 2000, several weeks subsequent to *Kozeny I* and *Kozeny II*, to which timely notices of appeal had been filed, Kozeny filed a motion to dismiss all claims for lack of federal subject matter jurisdiction and to dismiss the securities claims for failure to state a claim on which relief can be granted.

As indicated, it appears that federal jurisdiction over Plaintiffs' five COCCA claims was predicated on diversity. 28 U.S.C. § 1332.  National Union was a Pennsylvania corporation.  The other plaintiffs were all incorporated in the British Virgin Islands.  Kozeny was described in the complaint as a Czech-born financier with Irish and Grendian passports.  Landlocked and Turnstar were foreign corporations, and Peak House was said to be a Colorado corporation with its principle place of business in Palm Beach, Florida.  In the motion to dismiss, defendants alleged that National Union was a

"nominal" party and was only named as a plaintiff to invoke the jurisdiction of the court in violation of 28 U.S.C. § 1359. As to plaintiffs' securities claim, Kozeny, and the three others, in their motion to dismiss, asserted that it was plainly time-barred by the applicable statute of limitations. On September 25, 2000, the district court entered an order which, *inter alia*, denied "without prejudice" Kozeny's motion to dismiss under Fed. R. Civ. P. 12(b)(1). As far as we can tell from the record before us, the district court denied the motion without comment.

On appeal, the defendants argue that the district court did not have diversity jurisdiction over plaintiffs' COCCA claims because there was no true diversity in that National Union was only a nominal party, and had been named as a plaintiff for the sole purpose of trying to show true diversity. *See* 28 U.S.C. §§1332(a)(2),(3).

In our view, defendants have not made a sufficient showing that National Union was only a nominal party to the action. On the contrary, from the record before us, it would seem that National Union was quite clearly a "real party in interest." Be that as it may, we are not inclined to reverse the preliminary injunction on that ground. Moreover, plaintiffs have alleged a RICO claim and two securities claims which plaintiffs assert is an independent basis for federal jurisdiction.

IV

As indicated, the district court entered a preliminary injunction against Turnstar on June 23, 2000 (*Kozeny II*), and Turnstar filed a timely notice of appeal therefrom.

Turnstar filed a separate opening brief in connection with its separate appeal, adopting the arguments made by Kozeny, Landlocked and Peak House in their joint opening brief and also asserting that the district court erred in granting a preliminary injunction against it for two additional reasons: (1) the district court erred in concluding that the plaintiffs need only make a "prima facie" showing of personal jurisdiction over it before granting a preliminary injunction and (2) that in any event the district court erred in exercising personal jurisdiction over it. We disagree.

It is correct that the district court in *Kozeny II*, 115 F.Supp.2d at 1236, said that "when the issue of jurisdiction is raised before trial and decided on the basis of affidavits and other written materials, a plaintiff need only make a *prima facie* showing . . . . In this context, the burden is 'light' and all disputed facts and reasonable inferences must be drawn in Plaintiff's favor." Counsel argues that such may be correct when personal jurisdiction is challenged on a defendant's motion to dismiss, but it is not correct where a plaintiff seeks a preliminary injunction. In the latter case, says counsel, the personal jurisdiction must be established by a "preponderance of the evidence" before a preliminary injunction may issue.

In *Home-Stake Production v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1018 (10th Cir. 1990) we spoke as follows: "the burden of the Trustee at the preliminary injunction stage of this litigation was to establish a reasonable probability of ultimate success on the issue of jurisdiction when the action is tried on its merits." In *Home-Stake*, we held that

the burden of showing "reasonable probability" was met as to the one defendant Tudela, and, similarly, we now hold that plaintiffs in the present case have shown a "reasonable probability" that they will prevail on the issue of personal jurisdiction when its action is tried on the merits. We note that the district court in *Kozeny II* found personal jurisdiction over Turnstar on four separate grounds (1) tortious acts and/or injury in Colorado; (2) transaction of business in Colorado; (3) conspiracy jurisdiction; and (4) quasi-in-rem jurisdiction. The fact that the district court characterized plaintiffs' burden as "light," and said that plaintiffs need only make a "prima facie" showing, is not fatal. "Reasonable probability" is, to us, something less than "preponderance of the evidence." *See Home-Stake*, 907 F.2d at 1019. Turnstar's connections with Colorado are fully set forth in *Kozeny II,* 115 F. Supp. 2d at 1236-38, and need not be repeated here. In short, the record supports the district court's conclusion that it had personal jurisdiction over Turnstar, justifying a preliminary injunction.

Judgment affirmed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge

- 14 -